J. L. DOVER and wife v. H. L. RHEA et al.

*Trust—Trustee—Contract—Statute Frauds—Evidence.*

1. Where A conveyed a tract of land to B upon a parol trust to pay certain judgments, etc., and these were paid off and discharged with the proceeds of other lands held by A : *Held*, that a trust resulted to him, and that such an interest cannot be tranfeired by parol.

2. Although the trustor intended to give the land, which he sold, to his daughter, the plaintiff, and defendant agreed by parol to convey the lands held in trust to her : *Held*, that this did not constitute the defendant a trustee for the plaintiff, but amounted to a parol contract to convey, which was within the statute of frauds, and that the resulting trust descended to the heirs at law of the trustor.

This was a CIVIL ACTION, tried before *Philips, J.,* and a jury, at Fall Term, 1890, of the Superior Court of MADISON County.

The purpose of the action was to declare the defendant a trustee for the benefit of the plaintiff Polly as to a certain tract of land described in the complaint. The only issue submitted to the jury was as follows:

"Does H. R. Rhea hold the land under a parol agreement to convey to Polly Dover?"

It was in evidence that J. L. Rhea, the father of the *feme* plaintiff and defendant, conveyed the said land (it being known as the Arrington tract) to his son N. L. Rhea by deed absolute, upon a parol trust to sell the same and pay certain judgments which had been obtained against the said J. L. Rhea by one Flasher, and also certain costs, etc. That said N. L. Rhea, with the consent of his father, conveyed to the defendant by deed absolute, upon similar parol trusts, all of said tract except twelve acres, which he had sold to one Hensley, and substituting for said twelve acres, twenty-five acres of other land which his father had previously given him. That

there was an express agreement that the defendant should hold all of said land upon the trusts above mentioned.

It was also in evidence that said J. L. Rhea had divided all of his land (except that above mentioned) among his children and conveyed to them except a tract intended for Polly.

That afterwards, being pressed upon the judgments and being unable to sell the land conveyed in trust, and there being an offer for the tract intended for Polly, J. L. Rhea sold and conveyed the same to W. S. Rhea for $400, and that this was done upon an understanding with the defendant that he would convey the land he held in trust to said Polly whenever she called for a deed. It was also in evidence that defendant took the money and paid off and discharged the said judgments, costs, etc.

The defendant denied that he took the land in question upon any trust whatever, claiming that he purchased the same for a valuable consideration. He denies that he ever promised to convey the land to Polly. There was no evidence that Polly was ever in possession of the tract set apart and intended for her, nor was it ever conveyed to her. The Flasher judgments were against J. L. Rhea as principal, and the defendant as his surety.

The defendant objected to evidence as to his declaration that he would convey the land to Polly, claiming that it was inhibited by the statute of frauds. It was admitted, and he excepted.

The Court, after stating the contention of the parties, etc., charged as follows:

"If, upon the whole evidence, it is shown to the satisfaction of the jury that J. L. Rhea, in the division of his lands among his children, set apart a tract which he intended for his daughter Polly, and also set apart a tract to be sold to pay off the judgments against him, which he conveyed to his son N. L. Rhea for that purpose and with that understand-

ing, and N. L. Rhea, while holding the same for that purpose, conveyed twelve acres to Hensley, and to replace the value of the twelve acres conveyed twenty-five acres spoken of in the evidence, together with the said tract to his brother H. R. Rhea, with the consent of J. L. Rhea, and H. R. Rhea accepted the said deed from N. L. Rhea for the same purpose and with the same understanding, then he was simply a trustee. And if before H. R. Rhea sold the land or paid the judgments, he agreed with J. L. Rhea that if J. L. Rhea would convey to W. S. Rhea the tract intended for Polly and let him take the money and pay on the judgments, he would hold the tract (including the twenty-five acres) which N. L. Rhea had conveyed to him for Polly and make a deed to her for the same, and J. L. Rhea conveyed the land to W. S. Rhea and the purchase price was paid to H. R. Rhea, then the jury should answer the issue, Yes; otherwise, they will answer, No."

There were several exceptions to the charge, but these are not necessary to be stated to a proper understanding of the opinion.

The jury found the issue submitted to them by the Court, which appears in the record of the plaintiff

The counsel for the defendant then moved for judgment *non obstante veredicto.* The Court stated to counsel that a judgment *non obstante veredicto* was a judgment rendered in favor of the plaintiff, notwithstanding the verdict for the defendant, and that this judgment was given upon motion, which can only be made by the plaintiff, and refused the motion of the defendants' counsel, to which he excepted.

The counsel for the defendants moved that, notwithstanding the verdict, that as it appeared that the defendants had paid several hundred dollars to discharge incumbrances upon the land in dispute held chargeable with such sum, that an account be ordered to ascertain the same. Motion refused by the Court, and the defendant excepted.

The Court denied the motion for a new trial and gave judgment for the plaintiff.

The following note was appended by his Honor:

"I sign and settle the above as the case on appeal for the Supreme Court, notice of time and place for settling the same being waived by the parties. I send up the entire evidence because of the defendants' motion for judgment *non obstante veredicto* and his motion for a new trial. For these reasons I adopt the suggestion of the defendants' counsel to send up all the evidence, that the case and my rulings may be clearly seen and fully reviewed by the Supreme Court."

The judgment declared that the plaintiff was the owner of the land, and that, upon the failure of the defendants to convey to her in ten days, the decree should operate as passing the title.

Defendants appealed.

*Mr. T. F. Davidson*, for plaintiffs.
*Mr. W. H. Malone* (by brief), for defendants.

SHEPHERD, J.: There was evidence tending to show that J. L. Rhea, in effect, conveyed the land to the defendant upon a parol trust to sell the same and apply the proceeds to the satisfaction and discharge of the judgments and costs mentioned in the complaint. Assuming this to be true, we are, nevertheless, unable to find anything in the record which warrants the judgment of his Honor declaring that the defendant held the land in trust for the *feme* plaintiff, and directing that he execute a conveyance to her. If, as contended, the purposes of the trust were effectuated by the trustor with other means furnished by him, it is plain that there was a resulting trust in his favor. 1 Perry on Trusts, 152. This resulting trust descended to the heirs at law of the trustor, unless the *feme* plaintiff can show that he transferred it to her in his life-time.

It is well settled that while an express trust in lands may, in this State, be created by a parol declaration made contemporaneously with the transfer of the legal title (*Pittman* v. *Pittman*, 107 N. C., 159), such trust, when created, together with the resultant interest of the trustor, can be conveyed only in the same manner as other equitable interests in real property. *Patton* v. *Clendennin*, 3 Murphy, 68; *Holmes* v. *Holmes*, 86 N. C., 208. The question then to be determined is whether the resultant interest of J. L. Rhea has been acquired by his daughter, the *feme* plaintiff.

The said trustor had another tract of land which he intended to give his daughter, but instead of conveying it to her he sold it and with the proceeds paid off the judgments and costs above mentioned. The *feme* plaintiff had no legal or equitable interest whatever in this land, and her father was at liberty to dispose of it as he pleased It is true that the defendant promised that, upon a sale of the same and the payment of the said indebtedness, he would convey the tract which he held to the *feme* plaintiff; but if we consider this as a mere agreement to convey, it is void under the statute of frauds, and if we treat it as a declaration of trust it must likewise fail, because it is not evidenced by any writing, and was not made in connection with a conveyance of the legal title. *Frey* v. *Ramsour*, 66 N. C.. 466; *Pittman* v. *Pittman*, *supra*. It amounted simply to a parol agreement to convey the land to the *feme* plaintiff, and this, we have seen, cannot be enforced where it is denied by the answer. *Hollar* v. *Richards*, 102 N. C., 545; *Fortescue* v. *Crawford*, 105 N. C., 30. It is urged, however, that the plaintiff is entitled to relief by way of subrogation or by constructive trust, but this is founded entirely upon the idea that she had some interest in the property sold by her father, and, as such was not the case, it is clear that the position cannot be maintained. Her father relied simply upon the verbal agreement of the defendant to convey, and as the latter denies the agreement it must

follow that there was error in holding that the plaintiff acquired the equitable title to the land in question.

As the case goes back for a new trial, we think it proper to say that the other heirs at law may be made parties, and if a resulting trust be established the plaintiff may, upon petition, obtain substantial justice by requiring the heirs to account for the advancements made to them.

New trial.