JOHN L. TAYLOR v. MARGARET C. ADDINGTON AND HUSBAND, F. A.
ADDINGTON, AGNES C. ROBINSON AND HUSBAND, H. H. ROBINSON,
EUNICE C. HOLMES AND HUSBAND, J. J. HOLMES, AND MISS ANIESE
CROMARTIE.

(Filed 16 December, 1942.)

**1. Trusts § 1b—**

In North Carolina an express trust may be impressed upon land by an
adequate parol agreement, accompanying a conveyance of the legal title.

**2. Same—**

An express trust cannot be engrafted by parol upon an inheritance,
which is a gift of the law and not a grant of the decedent.

APPEAL by plaintiff from *Bone, J.,* at April Term, 1942, of BLADEN.
Affirmed.

Laura L. Taylor died intestate 6 April, 1939, leaving the plaintiff,
her husband, and her four sisters, the defendants, surviving her. There
were no children of the marriage.

The plaintiff brought this action against the defendants to have
declared in his favor a parol trust upon the lands descended to them by
the laws of inheritance from their deceased sister.

On the trial, plaintiff undertook to manifest his claim by introducing
a letter, wholly in the handwriting of Mrs. Taylor, of date 24 December,
1938, and evidence as to declarations by the defendants, chiefly through
his own testimony and that of H. L. Taylor, a brother. The letter is
as follows:

> "ELIZABETHTOWN, N. C.
> December 24, 1938

"PAPA AND SISTERS:

"I am I think sane at this minute but how long it will last I dont
know. I may do anything, but while I can please give John my land.
He had to do and be with me so much I feel he should have what I have
for he has been a dear good man and husband to me. This will be a
surprise to him. If I last till I can see a lawyer I will will it to him,
but if not I know you all will give it to him for me.

"Love to each of you and thank you for enduring me.

> LOTTIE C. TAYLOR."

The plaintiff testified that he found the paper, shortly after his wife's
death, in a trunk where she kept deeds, notes, receipts, and the like.

Plaintiff further testified as to the statements of defendants as follows:

"On Monday following after her death and before I found plaintiff's Exhibit 1, I talked with some of the defendants, Mrs. Taylor's sisters, the Monday following her funeral which was on Sunday. Mrs. Margaret Addington was out at home in the afternoon, I think it was that Monday. She told me that she had promised Lottie—and all of them, before her death, that is my wife, that what she had, her property that she had, that Lottie wanted me to have it, and that she was mighty glad she felt that way about it, and that they were willing; that was Mrs. Margaret Addington—said they were willing to it, and the next day, Tuesday, Mrs. Agnes Cromartie Robinson told me the same thing. They were, when they told me that, at home, at the house. My brother was there at the same time. He heard Mrs. Addington make the statement there— they called him in there to hear it. On Tuesday when they called my brother in, my brother and myself and Sara McDowell, a colored woman who was cooking and helping there, were present. My wife's sisters, Mrs. Robinson and Miss Aneise Cromartie and Mrs. Holmes, were there on Tuesday. Mrs. Addington didn't come back on Tuesday.

"They said practically the same thing on Tuesday with reference to it when they called in my brother to hear them make the statement. They said then that sometime before Lottie's death that they had promised Lottie that she had told them to see that I had what she had, if she passed away, the land, property, whatever she had that they were glad she felt that way about it and they were willing and ready to do it. Pursuant to that sometime after I procured deeds to be written—five or six weeks later, I guess. Mr. Hector Clark drew two deeds up for me of the places and I sent them up to them. That was a deed for each place, one for the place in Columbus County and one for the place we lived out there. The place we lived on out there is on the V. & C. S. Railroad. The Columbus County place is a small place, timber land, down in the edge of Columbus County.

"Mr. Hector Clark, a cousin of theirs, fixed the deeds up for me. I told him about this and sent them by the Clerk of the Court, Mr. Newton Robinson. They didn't sign them. I think Mr. Newton Robinson kept the deeds."

Further, on cross-examination plaintiff testified as to the conversation with Mrs. Robinson and Miss Aneise Cromartie as follows:

"On Tuesday, Mrs. Robinson and Miss Aneise Cromartie came to my place and they called my brother in. My brother was in a room that adjoins the one we were in. When he was called they did not call Virginia McDowell.

"No one called her in, she was the servant. They said the same thing that Mrs. Addington had said the day before, that they had promised Lottie something before her death that it was for me to have it and that

they were glad for me to have it and were glad that she felt that way—that was on Tuesday. They said that they had promised Lottie before she died sometime that her property, if she happened to pass away before I did, she wanted me to have it, and that they were glad she felt that way about it and they were willing. Six weeks later—sometime later—I had those deeds made out and sent to them. I didn't think it was necessary any time before. I had found the paper in the meantime. I showed it to Mr. Robinson, I did not show it to them, not then. I did about six months later. I didn't think it was necessary to show it to them right straight. I showed it to Mr. Heman Robinson, husband of Mrs. Robinson—he knew it. I showed it to Mr. Newton Robinson, Clerk of the Court and to Mr. Hector Clark when I found it or pretty soon after I found it. After they refused that time to sign them, I brought this paper down here to have it probated as a will. The reason for that was because one of them was in bad health at the time and Mr. Newton Robinson advised me to let it go for a while."

Plaintiff testified that during the period between 24 December, 1938, and 8 April, 1939—the time of her death—Mrs. Taylor was part of the time confined to the house and part of the time able to be out. Part of the time she was able to do her housework. She was subject to "spells of illness" and when not in one of those spells, was in "pretty good shape." During the indicated period she visited her father in the hospital at Lumberton three or four times. She came to Elizabethtown during the period, sometimes once a week, sometimes at periods of two weeks or more. Mr. Hector H. Clark, an attorney practicing in Elizabethtown, was her first cousin. "There were plenty of good lawyers practicing law in Lumberton."

H. L. Taylor testified as to a conversation between plaintiff and Mrs. Robinson and Miss Aneise Cromartie during which he was present, as follows:

"I recall that John L. Taylor took me to Kinston on Christmas Day of 1938, the Christmas before she died. After the funeral of Mrs. Taylor I heard a conversation between them and statements made by Mrs. Taylor's sisters to John L. Taylor about Mrs. Taylor's property. On Tuesday morning, the following Tuesday morning after she was buried on Sunday, I heard Mrs. Agnes Robinson and Miss Aneise Cromartie make a statement to him. They called me in there to hear it and said they wanted John to go ahead like he always did and said they had often heard Lottie say that when she was gone she wanted John to have what she had, and that they were glad for it to be like that and for him to go ahead like he always did."

The defendants, testifying in their own behalf, denied that they ever had the alleged conversations with the plaintiff, and were permitted

further, over plaintiff's objections, to testify that they had never made the alleged promises to the intestate, Mrs. Taylor. During the course of the trial, plaintiff took a number of exceptions to the admission and exclusion of evidence which, in view of the conclusion reached, are not thought pertinent to the decision.

At the close of the plaintiff's evidence and at the close of all the evidence, defendants moved for judgment as of nonsuit on the evidence, and the motion was allowed. Plaintiff appealed.

*R. J. Hester, Jr., and Varser, McIntyre & Henry for plaintiff, appellant.*

*Clark & Clark for defendants, appellees.*

SEAWELL, J. The paper writing referred to as a letter of Mrs. Taylor was offered for probate in solemn form upon caveat of these defendants; and from an adverse decree in the court below, the defendants appealed. *In re Will of Taylor,* 220 N. C., 524, 17 S. E. (2d), 654. A new trial was granted, and it is assumed from the record that the issue of *devisavit vel non* was found against the paper. It is now offered, with other evidence, to establish a parol trust in favor of plaintiff in the lands descended to defendants upon the death, intestate, of the sister, Mrs. Taylor. Since it does not appear from the evidence that the existence of the letter was known to the defendants until some time after the death of Mrs. Taylor, such commitments as they may have made were not based on the letter, and it has, at most, a minor evidential bearing in the case. Plaintiff must establish his right, upon the verity and sufficiency of the alleged promises made by the defendants to Mrs. Taylor. Accepting the evidence of plaintiff as true, for the purpose of discussion, and taking it in the light most favorable to him, we inquire whether it could possibly have the effect of establishing the suggested trust.

In North Carolina the seventh section of the English statute of frauds has not been enacted into law, and no equivalent has been adopted. Therefore, it is held that an express trust may be impressed on land by adequate parol agreement accompanying the conveyance of the legal title. *Peele v. LeRoy, ante,* 123; *Wilson v. Jones,* 176 N. C., 205, 97 S. E., 18; *Boone v. Lee,* 175 N. C., 383, 95 S. E., 659; *Anderson v. Harrington,* 163 N. C., 140, 79 S. E., 426; *Blackburn v. Blackburn,* 109 N. C., 488, 489, 13 S. E., 937; *Pittman v. Pittman,* 107 N. C., 159, 12 S. E., 61; *Riggs v. Swann,* 59 N. C., 118; *Shelton v. Shelton,* 58 N. C., 292.

But we have found no case supporting the view that such a parol trust may be engrafted upon an inheritance, as the plaintiff seeks to do. If the principle should be judicially recognized, the effect would be to substitute a prior parol agreement for a devise by a will, made with the

formalities and solemnities by which testamentary dispositions are protected, and open the door to endless frauds upon the laws of inheritance.

The transaction out of which an express parol trust of this nature may arise is necessarily one of contract. In considering the effect of the parol promise or agreement, we must not forget that the principal role in the creation of an express trust is taken by the owner with that intent; the parol promise is complementary and incidental to such action as is taken by the owner and in furtherance thereof. It is effectual only when made in connection with the transfer of title and, by necessary inference, to the party who makes the transfer. *Dover v. Rhea,* 108 N. C., 88, 13 S. E., 164. It presupposes that such party has control of the subject matter of the trust which he desires to create, and contributes it by conveyance of the land with that intent (Tiffany, Real Property, 1939, section 250), the grantee, at the same time, accepting the title as affected by his agreement. *Peele v. LeRoy, supra.* Devolution of title in a case of intestacy is no more the voluntary act of the decedent owner than is his own dissolution. It is a thing that will happen if let alone; the resulting inheritance is a gift of the law and not the grant of the decedent. The inheritance law is certainly innocent of any purpose to create a trust in determining the succession, and it imposes no condition of acceptance other than inheritability. There is nothing, in the legal sense, upon which a parol trust may be engrafted.

Moreover, the statute of descents invests the heir with the beneficial interest—in this case the fee—which is inconsistent with the theory of trust. We do not understand that—in the absence of fraud or mutual mistake—an express parol trust, entirely repugnant to its provisions, can be engrafted on a deed unmistakably conveying the beneficial interest. *Gaylord v. Gaylord,* 150 N. C., 222, 227, 63 S. E., 1028. The plaintiff is in no better position.

It must be assumed that all parties concerned knew that if the defendants survived, and Mrs. Taylor died intestate, the sisters would inherit in their own right. Interpreting the alleged agreement as favorably to the plaintiff as the circumstances will permit, it can be regarded only as a promise to convey the lands to the plaintiff if and when the defendants came into the inheritance. The plaintiff does not seek to recover on that theory, realizing, perhaps, that such a promise would be within the statute of frauds. If the defendants made any commitment to Mrs. Taylor in response to her desire that plaintiff should have the land in case she died intestate, the obligation is moral rather than legal.

Judgment as of nonsuit was properly entered and is

Affirmed.