R. RON STILWELL, ADMINISTRATOR OF THE ESTATE OF GEORGE ERVIN SPEIGLE v. JOYCELYN C. WALDEN

No. 8322SC1019

(Filed 2 October 1984)

1. **Fraud § 7— constructive fraud—fiduciary relationship**
    In an action alleging constructive fraud, there was evidence from which a jury could find that a confidential or fiduciary relationship existed where there was evidence that plaintiff's intestate relied upon defendant to handle his funds and see that his needs were attended to, and where defendant made purchases for plaintiff's intestate, paid his bills, managed his investments, and saw to it that his household was properly operated and his needs supplied. A confidential or fiduciary relation can exist under a variety of circumstances and is not limited to those persons who also stand in some recognized legal relationship to each other, such as attorney and client, principal and agent, guardian and ward, and the like.

2. **Rules of Civil Procedure §§ 8, 32; Evidence §§ 23, 24— introduction of deposition when deponent present—introduction of admissions in the pleadings proper**
    The deposition of a party, if otherwise admissible, may be introduced even if that party is present in court; furthermore, plaintiff was not only entitled to introduce defendant's admissions into evidence, but had a right to have the court tell the jury that facts stated therein were not disputed. G.S. 8-83(2), (9). Rules 7(d), 32(a)(3) of the N. C. Rules of Civil Procedure.

3. **Fraud § 11; Cancellation and Rescission of Instruments § 9.1— administration of trust funds—constructive fraud—undue influence—mental incapacity—evidence of self interest relevant**

Testimony that tends to show that defendant had her interest in mind in administering plaintiff's intestate's trust funds and that defendant's interest was also a factor in the trust being established in the first place was plainly relevant and material to an action to recover assets plaintiff's intestate allegedly conveyed to defendant due to constructive fraud, mental incapacity, and undue influence.

4. **Fraud § 11; Cancellation and Rescission of Instruments § 9.1— evidence of intestate's health—relevant**

In an action to recover assets allegedly conveyed to defendant due to constructive fraud, mental incapacity, and undue influence, testimony concerning plaintiff's intestate's health, appearance, and inability to talk coherently, though insufficient by itself to establish mental incapacity, was nevertheless relevant on that issue and the other issues.

APPEAL by plaintiff from *Davis, Judge.* Judgment entered 27 April 1983 in Superior Court, IREDELL County. Heard in the Court of Appeals 7 June 1984.

Plaintiff administrator sued to recover assets his intestate allegedly conveyed to defendant due to constructive fraud, mental incapacity, and undue influence. At the close of plaintiff's evidence the case was dismissed by verdict being directed against plaintiff on all the claims made.

The plaintiff's evidence, viewed in its most favorable light, tended to show the following: Plaintiff's intestate, George Ervin Speigle, lived at his home on Buffalo Shoals Road in Iredell County with his wife, Hazel Shaver Speigle, until she died intestate in February of 1981. Under the Intestate Succession Act, Mr. Speigle was the sole distributee of Mrs. Speigle's estate, the assets of which included about $60,000 in cash, 833⅓ shares in A. L. Shaver and Sons, Inc., a corporation founded and owned by her family, and interests in several pieces of real estate. Mr. Speigle renounced his right to administer the estate in favor of defendant, who was Mrs. Speigle's niece. For several years before Mrs. Speigle died defendant had taken care of her business affairs by writing her checks, paying her bills, and balancing her checkbook. After Mrs. Speigle died, defendant did similar services for Mr. Speigle, among other things paying his bills, managing his investments, and obtaining domestic employees to run his house-

hold and look after his personal needs. Most of the time after his wife died, Mr. Speigle was confined to a wheelchair, and after May of 1981 suffered from chronic brain syndrome and increasing confusion. Sometime before 3 September 1981 defendant made an appointment for Mr. Speigle to see Attorney James P. Ashburn in Statesville. Mr. Ashburn represented her as administrator of Mrs. Speigle's estate and his firm represented A. L. Shaver and Sons, Inc., where defendant had been employed for thirty years. Defendant drove Mr. Speigle to his appointment with Mr. Ashburn and was in the conference room with them while the interview was conducted, which led to Mr. Ashburn preparing some papers for Mr. Speigle's signature. When the papers were ready, defendant picked them up and they have been in her possession ever since. On 3 September 1981 defendant drove Mr. Speigle to Troutman and parked the car in front of the North Carolina National Bank Building, Mr. Speigle remaining in the car; and a Notary Public from the bank went to the car where Mr. Speigle signed the papers involved, defendant holding his hand while he did so. The documents executed were a trust agreement and a deed, which conveyed all the net assets of his wife's estate, which he had not then received, to defendant in trust for his benefit during his lifetime and thereafter to her in fee simple. Mr. Speigle did not read the documents before signing them, and after they were signed defendant kept them and gave no copies to Mr. Speigle. Sometime during the first two weeks of September 1981 defendant was at A. L. Shaver and Sons' plant in Statesville when Mr. Speigle's caretaker drove him there; defendant came out of the plant, went to the car, and assisted him while he signed in blank the assignment form on a certificate for 833⅓ shares of A. L. Shaver and Sons' stock that had been purportedly issued to him on 4 September 1981. On that same day A. L. Shaver and Sons, Inc. issued a certificate for the same number of shares to defendant as trustee under the trust agreement. When the case was tried defendant was secretary-treasurer and general manager of A. L. Shaver and Sons, Inc.

*Baumberger and Bell, by Michael P. Baumberger, for plaintiff appellant.*

*Homesley, Jones, Gaines & Fields, by Edmund L. Gaines, for defendant appellee.*

PHILLIPS, Judge.

At trial plaintiff undertook to prove the three grounds alleged in the complaint for invalidating the transfer of his intestate's property to the defendant—constructive fraud, undue influence, and mental incapacity. The evidence presented was clearly sufficient, in our opinion, to establish the constructive fraud claim; and though it was not sufficient to establish the undue influence and mental incapacity claims, the new trial required should be on these claims as well, since much evidence relevant to these claims was erroneously excluded by the court during the course of the trial.

[1] Fraud, actual and constructive, is so varied in form many courts have refused to precisely define it, lest the definition itself be turned into an avenue of escape by the crafty and unscupulous. *Standard Oil Company v. Hunt*, 187 N.C. 157, 121 S.E. 184 (1924). Nevertheless, the legal principles that govern constructive fraud claims are well established. One is that a case of constructive fraud is established when proof is presented that a position of trust and confidence was taken advantage of to the hurt of the other. *Terry v. Terry*, 302 N.C. 77, 273 S.E. 2d 674 (1981); *Link v. Link*, 278 N.C. 181, 179 S.E. 2d 697 (1971); 37 C.J.S. *Fraud* § 2 (1943). Another is that when a transferee of property stands in a confidential or fiduciary relation to the transferor, the transferee has the burden of showing that in getting the property he acted fairly and in good faith. *Stone v. McClam*, 42 N.C. App. 393, 257 S.E. 2d 78, *rev. denied*, 298 N.C. 572, 261 S.E. 2d 128 (1979). That virtually all of the property of plaintiff's intestate was transferred to defendant without payment or valuable consideration is admitted by the pleadings. Thus, the only other thing that plaintiff had to prove to make out a case of constructive fraud was that a confidential or fiduciary relationship existed between defendant and plaintiff's intestate when the property was transferred. The trial judge ruled that no evidence from which the jury could find that such a relationship existed had been presented. We disagree.

A confidential or fiduciary relation can exist under a variety of circumstances and is not limited to those persons who also stand in some recognized legal relationship to each other, such as attorney and client, principal and agent, guardian and ward, and

the like; it also "extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other." *Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906 (1931). A clearer example of a confidential relationship within the purview of the foregoing case would be hard to find. According to the evidence Mr. Speigle relied upon defendant to handle his funds and see that his needs were attended to, and she made purchases for him, paid his bills, managed his investments, and saw to it that his household was properly operated and his needs supplied. Obviously, such evidence bespeaks dependence and confidence on the one hand and influence on the other; which relationship was accentuated by the fact that the intestate, because of his health, was unable to do for himself and therefore needed the help of others. The court was apparently of the opinion that what had to be shown was a wrongfully acquired influence or control, but that is a requirement of fraud and undue influence, not constructive fraud. That influence over another is honestly and properly acquired does not lessen its effect and is beside the point in a constructive fraud case. It is just because confidence in others inherently and inevitably begets influence that the law of constructive fraud is needed, lest that influence be exerted for the benefit of the one having it, rather than that of the one whose confidence created it. This decision is also in accord with the recently decided case of *Curl v. Key,* 311 N.C. 259, 316 S.E. 2d 272 (1984), where our Supreme Court held that a fiduciary relationship was created by circumstances that were less traditional and much weaker, it seems to us, than those recorded here, which fall but little short of establishing the relationship of principal and agent.

[2] During the course of the trial the court also made a number of other errors to plaintiff's prejudice. One of the most damaging was in refusing to permit plaintiff to introduce defendant's deposition, which plaintiff had taken during the discovery period. The basis for this refusal was that defendant was present in court and could therefore testify from the stand if plaintiff saw fit to use her. While that is a proper basis for excluding the deposition of a witness, G.S. 8-83(2), (9), it is no basis for excluding the deposition of a party, which Rule 32(a)(3) of the N.C. Rules of Civil Procedure makes useable without restriction, if otherwise admissible under

the rules of evidence. *Nytco Leasing v. Southeastern Motels*, 40 N.C. App. 120, 252 S.E. 2d 826 (1979). And when plaintiff out of necessity put defendant on the stand, he was not permitted to question her about certain material admissions made in the answer to the complaint; nor was he allowed to read these admissions to the jury. The basis for these rulings was that reading pleadings to the jury is forbidded by Rule 7(d) of the N.C. Rules of Civil Procedure. The only effect and purpose of that rule, however, was to eliminate the former practice of introducing cases to the jury by reading the pleadings; it is not concerned with the admissibility of evidence, one of the basic principles of which, under our adversary system of litigation, is that anything a litigant says about his case, if relevant and not otherwise rendered inadmissible, can be put in evidence against him. 2 Brandis N.C. Evidence § 167 (1982). Because of this rule, the testimony of police officers, doctors, accident scene visitors, and others as to what some litigant said at one time or another about some issue in his case is routinely accepted in the courts of the state every court day. And, of course, there is an additional reason for receiving into evidence a party's statement in the pleadings that his case is being tried under, as was the case here. Until a pleading is withdrawn or changed with the court's approval, it is a binding judicial admission of any fact stated therein; and that the pleading was signed only by the lawyer makes no difference, unless it is made to appear that the party's attorney acted without authority, of which there was no suggestion in this instance. Under the circumstances that existed, therefore, plaintiff was not only entitled to introduce defendant's admissions in the pleadings into evidence, but had a right to have the court tell the jury that the facts stated therein were not disputed. 2 Brandis N.C. Evidence § 171 (1982). Under our practice, pleadings are the indispensable cornerstones of every litigant's case, and whether they are done by the parties themselves or by their hired representatives they do not become irrelevant when the trial begins.

[3] Travis Shaver, Mrs. Speigle's brother's wife, was called by plaintiff to testify concerning a conversation she had with the defendant approximately three months after the trust was set up. In relevant part, her testimony, objected to and excluded from the jury, would have been that the defendant was upset about certain expenditures that she had been asked to make from the

trust. The witness stated she told defendant that since Mr. Speigle's property would go to his sisters upon his death defendant should not be reluctant to spend as requested on Mr. Speigle as long as he lived. According to the witness, the conversation continued as follows:

> [S]he said to me, "At George's death, everything he has will be mine." I said, "Joycelyn, that's just what you think, why do you say that?" She said, "Because I took him to the attorney's office and drew up—or had drawn up—the document where he signed stating at his death everything he had would go to me." I said, "Now, Joycelyn, you know that will not hold water." She said, "Well, you wait and see, that's the way it is."

The relevancy and materiality of this testimony is plain. It tends to show that defendant had her own interest in mind in administering Mr. Speigle's trust funds and that her interest was also a factor in the trust being established in the first place. Other testimony indicating defendant's reluctance to make certain purchases for Mr. Speigle's benefit from the trust fund was also improperly excluded.

[4] Still other testimony improperly excluded by the court concerned Mr. Speigle's health, appearance, and inability to talk coherently at different times during the year that his property was conveyed away and defendant's interest in A. L. Shaver and Sons, Inc. during the period involved. The evidence as to Mr. Speigle's health, though insufficient by itself to establish his mental incapacity, was nevertheless relevant on that issue and the other issues, as well, since one in poor physical or mental health is often more susceptible to influence, both undue and otherwise, than are those in good health. And the evidence as to defendant's relationship with A. L. Shaver and Sons tended to support plaintiff's contention that defendant acted for her own benefit, rather than that of Mr. Speigle's, since it was during that same period that defendant's position in the company also improved.

New trial.

Judges WEBB and JOHNSON concur.