BON C. HINSON, JR. v. HARRY LEE HINSON AND WIFE, CAROL HINSON

No. 8526SC918

(Filed 20 May 1986)

**1. Wills § 60— renunciation—reasonable time**

A devisee may disclaim or renounce a right under a will, but he or she must do so within a reasonable time.

**2. Wills § 60— renunciation—motion to set aside for lack of timeliness**

Plaintiff could not successfully argue that his renunciation should be set aside as to his testate interest because it was not made within a reasonable time and as to any intestate interest because it was not made within the time limitations set out in N.C.G.S. § 29-10 (1966), since the clerk, who had exclusive original jurisdiction of the administration of testatrix's estate, allowed plaintiff's petition to renounce; the judgment was regular and valid on its face; as a party to the original action, plaintiff could not subsequently collaterally attack it; and plaintiff could not prevail on his contention that the court erred as a matter of law where he failed to appeal in due time.

**3. Wills § 60; Trusts § 13.2— renunciation of testamentary interest—engrafting parol trust on renounced interest not permitted**

Where plaintiff sought and obtained an order allowing him to renounce any interest under the will of his mother, he could not thereafter engraft a parol trust upon his renounced interest, since to recognize a renouncer's right to engraft a parol agreement upon an order of the court would severely undermine the integrity of personal and property rights acquired on the faith of judicial proceedings, and since a renunciation relates back to the death of the testator so that the renouncer never actually holds legal title to the property.

**4. Wills § 60; Trusts § 14.2— renunciation of testamentary interest—constructive trust—undue influence**

Plaintiff could maintain an action seeking the declaration of a constructive trust on his interest under his mother's will which he had renounced, and his forecast of evidence created a genuine issue as to whether defendant unduly influenced his decision to sign the renunciation where such evidence tended to show that, at the time he signed the renunciation, plaintiff was physically ill, suffering from diabetes; his business had recently gone bankrupt; he and his wife had planned to move from Charlotte where the property in question was located, to Greenville, S. C. and as a result he needed someone to attend to the rental property in his absence; plaintiff and defendant were brothers and plaintiff "trusted him implicitly"; plaintiff turned the management of the property over to defendant and defendant began to collect rents, pay the mortgage and see that the property was maintained; the petition to renounce which plaintiff signed was drafted by defendant's lawyers who were present when plaintiff signed it; the lawyers informed plaintiff that defendant could not continue to manage the property unless he signed; defendant's lawyers filed the petition and obtained the "Order of Renunciation"; and plaintiff was not represented by counsel.

5. **Trusts § 14.2— constructive trust—confidential or fiduciary relationship—sufficiency of evidence**

Evidence was sufficient to create a genuine issue as to whether a confidential or fiduciary relationship existed between plaintiff and defendant where such evidence tended to show that they were brothers who inherited rental property from their mother, and defendant agreed to manage the property for plaintiff.

6. **Wills § 60; Equity § 1.1— renunciation of testamentary interest—attempt to defraud creditors—clean hands**

A genuine issue of fact existed as to whether plaintiff renounced his interest under his mother's will in an attempt to defraud his judgment creditors, and therefore whether his claim for equitable relief was barred by the clean hands doctrine; furthermore, plaintiff's false declarations to the court at the time he renounced constituted unclean hands which would bar his equitable remedies, unless he acted under undue influence so that his guilt was less than that of defendant, and a genuine issue of fact existed as to whether defendant's wrongdoing sufficiently reduced plaintiff's culpability to the point that plaintiff was entitled to equitable relief.

7. **Fraud § 12; Cancellation and Rescission of Instruments § 10.1— quitclaim deed obtained by fraud—sufficiency of evidence**

A genuine issue of fact existed as to whether defendant obtained through fraud a quitclaim deed to plaintiff's interest in property left to the parties by their mother where plaintiff's evidence tended to show that defendant represented that a new roof was required in order to continue renting the property; because of plaintiff's outstanding judgments and the questions surrounding the validity of plaintiff's renunciation, defendant could not obtain financing, using the property as collateral, without the quitclaim deed; plaintiff relied upon defendant's representations and agreed to sign the deed; defendant's lawyers drafted the deed and sent it to plaintiff for his signature; and plaintiff subsequently learned that, at the time defendant requested the deed, the roof did not need replacing.

APPEAL by plaintiff from *Burroughs, Judge.* Order entered 1 July 1985 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 16 January 1986.

On 26 December 1970 Lula D. Hinson, mother of plaintiff and defendant-husband, died testate. On 24 May 1972 her holographic will was probated. The will devised "the land and real property of 2014 Greenway . . . [to plaintiff]." It further provided: "However he shall share and share alike with his brother [defendant-husband] the rents from the upstairs Apts. in the big house, after taxes & insurance and [repairs] on roof." The will contained no residuary clause.

On 10 January 1974 plaintiff sought and obtained an Order of Renunciation. Tracking the language of plaintiff's "Petition to Renounce," the order provides:

　　1. That [plaintiff] be hereby authorized to renounce all his rights in and to the bequest under the Will of Lula D. Hinson; and

　　2. That the provision of said Will directing distribution of property to [plaintiff] be of no effect; and

　　3. That the Executor of the Estate . . . be directed to hold and administer said estate as if [plaintiff] had died immediately preceding Lula D. Hinson.

In addition to the renunciation, plaintiff conveyed whatever right or interest he retained in the Greenway Avenue property to defendant-husband by a quitclaim deed dated 29 October 1975. The deed was recorded, and defendant-husband subsequently executed a deed transferring the property to himself and defendant-wife.

Plaintiff filed this action seeking a declaration that defendants hold the Greenway Avenue property in trust for plaintiff and an order requiring defendants to reconvey the property. The trial court granted defendants' motion for summary judgment. Plaintiff appeals.

*Ray Rankin for plaintiff appellant.*

*William G. Robinson for defendant appellees.*

WHICHARD, Judge.

## I.

The sole question is whether the court erred in granting defendants' motion for summary judgment. Defendants are entitled to summary judgment pursuant to N.C. Gen. Stat. 1A-1, Rule 56 if the record shows "that there is no genuine issue as to any material fact and that [defendants are] entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the evidence is viewed in the light most favorable to the non-moving party. *Valdese General Hosp., Inc. v. Burns*, 79 N.C. App. 163, 164, 339 S.E. 2d 23, 25 (1986).

We hold that the evidence, viewed in the light most favorable to plaintiff, raises genuine issues of material fact. Accordingly, we reverse.

## II.

The forecast of evidence, viewed in the light most favorable to plaintiff, *Burns, supra,* tends to establish the following:

In 1973 defendant-husband began to "manage" the Greenway Avenue property for plaintiff. According to plaintiff's affidavit, "[h]e was to collect the rents, pay the mortgage payments and generally keep the property up."

Plaintiff's business failed, and as of 31 January 1974 judgments totalling $64,973.30 had been entered against him personally. In addition to his financial problems plaintiff was physically ill. He and his wife, then residents of Mecklenburg County, decided to move to Greenville, South Carolina.

The Greenway Avenue property was in disrepair. Defendant-husband, apparently concerned about preserving his interest in the property and the money he would have to advance to maintain the property, informed plaintiff that he could not continue to manage the property unless plaintiff renounced the interest he had received under his mother's will. While plaintiff was aware that the effect of the renunciation, if valid, would be to defeat any rights his creditors had to the property, he thought he had sufficient assets to satisfy his debts. Plaintiff, concerned about finding someone else to manage the property and wanting to move, agreed to sign the "Petition to Renounce."

Prior to signing the renunciation, however, plaintiff and defendant-husband orally agreed that defendant-husband would hold the property in trust for plaintiff and in ten years, when the judgments expired "or whatever happened," they would have an accounting and defendant-husband would get half the property. Plaintiff signed the "Petition to Renounce" and an "Order of Renunciation" was obtained. It is not clear from the record whether the judgments against plaintiff ultimately were paid, were renewed, or have expired.

Shortly before 24 October 1975, defendant-husband informed plaintiff that he needed to obtain a loan using the property as col-

lateral in order to finance needed repairs on the roof. Relying on defendant-husband's representations, plaintiff signed a quitclaim deed to defendant-husband, not for the purpose of vesting ownership in him, but to make it possible for defendant-husband to obtain a loan. Plaintiff subsequently discovered that prior to defendant-husband's request for a quitclaim deed a new roof had already been put on the property.

## III.

### RENUNCIATION

Plaintiff sought and obtained an order allowing him to renounce all interest in the property bequeathed to him under his mother's will and instructing the executor of her estate "to hold and administer said estate as if [plaintiff] had died immediately preceding [the testatrix]." If the order is given effect, plaintiff would have no interest in the property and the transactions involving the quitclaim deed would be of no consequence.[1]

A beneficiary's right to renounce exists irrespective of statutory authority. *Keesler v. Bank*, 256 N.C. 12, 19, 122 S.E. 2d 807, 813 (1961). In 1974, when plaintiff renounced all interest under his mother's will, there was no statutory authority for the renunciation of testate interests. Subsequently, the General Assembly enacted Chapter 31B of the General Statutes. N.C. Gen. Stat. 31B-5, however, provides that Chapter 31B "does not abridge the right of a person to waive, release, disclaim or re-

---

1. While it is clear that should the renunciation be given effect and the testatrix's estate be distributed as if plaintiff had predeceased her, plaintiff would have no interest in the property, it is not clear what interest, if any, defendant-husband obtains. N.C. Gen. Stat. 31B-3(b) and N.C. Gen. Stat. 31-42(a), effective 1 October 1975, provide that a renounced gift passes first by substitution to such issue of the renouncer as would have been an heir to the testator under the provisions of the Intestate Succession Act had the renouncer died before the testator. If no such heir exists, the gift lapses and passes under the residuary clause of the will. N.C. Gen. Stat. 31-42(c)(1)(a). If, as here, there is no residuary clause, the gift passes as if the testator had died intestate. N.C. Gen. Stat. 31-42(c)(1)(b). Arguably, the law applicable to plaintiff's renunciation, N.C. Gen. Stat. 31-42 (1966), and the express mandate of the order requiring testatrix's estate to be distributed as if plaintiff had predeceased her, dictate the same results.

As plaintiff may have heirs qualified to take under N.C. Gen. Stat. 31-42 (1966), our decision regarding the effect of the renunciation, if valid, is limited to plaintiff, and any resolution reached in this action determines only the relative rights of plaintiff and defendants.

nounce property or an interest therein under any other statute or as otherwise provided by law." *See also Sedberry v. Johnson,* 62 N.C. App. 425, 302 S.E. 2d 924 (1983).

[1]   A beneficial bequest or devise gives rise to a presumption of acceptance by the beneficiary. *Perkins v. Isley,* 224 N.C. 793, 798, 32 S.E. 2d 588, 591 (1945). A devisee may disclaim or renounce a right under a will, but he or she must do so within a reasonable time. *Id.*

N.C. Gen. Stat. 29-10 (1966) governs the renunciation of intestate interests prior to 1 October 1975. 1975 N.C. Sess. Laws, ch. 371, sec. 2 and sec. 6. N.C. Gen. Stat. 29-10 (1966) provides, in pertinent part:

(a) An heir may renounce the succession to his share of the estate of an intestate, and such renunciation shall be retroactive to the date of the death of the intestate. The renunciation shall be by a signed and acknowledged writing, executed by the heir in person, or by his duly authorized attorney, guardian, or next friend when approved by the clerk of the superior court and the resident judge of the superior court, and shall be delivered to the clerk of the superior court of the county in which the administrator or collector qualifies.

(b) Such renunciation must be filed within four months after the death of the intestate if letters of administration are not issued within that period, or if letters of administration are issued during that period, then within two months after the date of such issuance, or if litigation that affects the share of the heir in the estate is pending at the expiration of such period for filing the renunciation, then within such reasonable time as may be allowed by written order of the clerk of the superior court.

. . . .

(d) *If no renunciation is made in the manner and within the time provided for in subsections (a) and (b) hereof, the heir shall be conclusively deemed to have waived his or her right to renounce.* [Emphasis supplied.]

[2]   Plaintiff initially argues that the renunciation should be set aside as to his testate interest, which was renounced in para-

graphs one and two of the order, because it was not made within
a reasonable time, and as to any intestate interest, which was re-
nounced in paragraph three of the order, because it was not made
within the time limitations set out in N.C. Gen. Stat. 29-10 (1966).
The legality of plaintiff's renunciation was a matter before the
Clerk, who, having exclusive original jurisdiction of the ad-
ministration of testatrix's estate, *In re Estate of Adamee*, 291
N.C. 386, 398, 230 S.E. 2d 541, 549 (1976), allowed plaintiff's "Peti-
tion to Renounce." *See Jeffreys v. Snipes*, 45 N.C. App. 76, 78, 262
S.E. 2d 290, 292, *disc. rev. denied*, 300 N.C. 197, 269 S.E. 2d 624
(1980). The judgment is regular and valid on its face. As a party
to the original action, plaintiff may not now collaterally attack it.
*Jeffreys*, 45 N.C. App. at 77-78, 262 S.E. 2d at 291 (1980); *see also
Lumber Co. v. West*, 247 N.C. 699, 705, 102 S.E. 2d 248, 252 (1958).
In essence plaintiff argues that the court erred as a matter of
law. A party may only be relieved of a judgment entered upon a
mistake of law "by appeal or proceedings equivalent thereto
taken in due time." *Menzel v. Menzel and Williams v. Blade*, 250
N.C. 649, 654, 110 S.E. 2d 333, 337 (1959); *Lumber Co.*, 247 N.C. at
701, 102 S.E. 2d at 249. Thus, plaintiff is not entitled to relief
from the order of renunciation on grounds of error of law.

Liberally construed, plaintiff's complaint and the evidence
forecast by plaintiff suggest two equitable theories upon which
plaintiff could seek recovery of that portion of his renounced in-
terest now held by defendants.

[3] First, plaintiff has alleged and forecast evidence of a parol
trust which would alter the effect of the "Order of Renunciation."
"North Carolina is one of a minority of states that has never
adopted the Seventh Section of the English Statute of Frauds
which requires all trusts in land to be manifested in writing."
*Bryant v. Kelly*, 279 N.C. 123, 129, 181 S.E. 2d 438, 441 (1971). Ac-
cordingly, a parol trust engrafted upon a deed or conveyance in
the " 'A to B to hold in trust for C' situation" is always upheld, *id.*
at 129, 181 S.E. 2d at 442, and a parol trust engrafted upon a deed
or conveyance in the A to B to hold in trust for A situation is
upheld when induced by fraud, mistake or undue influence. *Wil-
letts v. Willetts*, 254 N.C. 136, 143, 118 S.E. 2d 548, 553 (1961);
*High v. Parks*, 42 N.C. App. 707, 711, 257 S.E. 2d 661, 663-64, *disc.
rev. denied*, 298 N.C. 806, 262 S.E. 2d 1 (1979). Analogizing the
order to a deed, arguably plaintiff can engraft a parol trust upon

any interest defendant-husband obtained by virtue of plaintiff's renunciation upon a showing of fraud, mistake or undue influence.

While the order of renunciation is similar to a deed in that it may have effected a transfer of title to plaintiff's intended trustee, in all other respects it is different. Plaintiff sought and obtained an order allowing his renunciation. To recognize a renouncer's right to engraft a parol agreement upon an order of the court would severely undermine "the integrity of personal and property rights acquired on the faith of judicial proceedings, as well as the public interests involved in the finality and conclusiveness of judgments." *See Shaver v. Shaver*, 248 N.C. 113, 120, 102 S.E. 2d 791, 797 (1958).

In *Taylor v. Addington*, 222 N.C. 393, 23 S.E. 2d 318 (1942), the Court held that a parol trust could not be engrafted upon an intestate inheritance. The Court reasoned:

> In considering the effect of the parol promise or agreement, we must not forget that the principal role in the creation of an express trust is taken by the owner with that intent; the parol promise is complementary and incidental to such action as is taken by the owner and in furtherance thereof. It is effectual only when made in connection with the transfer of title and, by necessary inference, to the party who makes the transfer. . . . *It presupposes that such party has control of the subject matter of the trust which he desires to create, and contributes it by conveyance of the land with that intent . . .*, the grantee, at the same time, accepting the title as affected by his agreement. . . . Devolution of title in a case of intestacy is no more the voluntary act of the decedent owner than is his own dissolution. *It is a thing that will happen if let alone; the resulting inheritance is a gift of the law and not the grant of the decedent.* The inheritance law is certainly innocent of any purpose to create a trust in determining the succession, and it imposes no condition of acceptance other than inheritability. There is nothing, in the legal sense, upon which a parol trust may be engrafted. [Citations omitted. Emphasis supplied.]

*Taylor*, 222 N.C. at 397, 23 S.E. 2d at 321. For similar reasons, a parol trust may not be engrafted upon a renounced interest. A renunciation is not a grant of legal title by the renouncer. It

merely triggers a set of statutorily defined legal rights which ultimately determine ownership. *See* footnote 1, *supra*. In addition, a renunciation relates back to the death of the testator or intestate. *Perkins*, 224 N.C. at 798, 32 S.E. 2d at 591; N.C. Gen. Stat. 29-10(a) (1966). The renouncer never actually holds legal title to the property.[2] Thus, we reject plaintiff's contention that he may engraft a parol trust upon his renounced interest.

[4] The second equitable remedy suggested by plaintiff's complaint and forecast of evidence is a constructive trust. A constructive trust is a broad remedy

> imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

*Wilson v. Development Co.*, 276 N.C. 198, 211, 171 S.E. 2d 873, 882 (1970). Unlike a parol trust, which arises by agreement of the parties, a constructive trust arises by operation of the law irrespective of the parties' intent. *Id.; Ferguson v. Ferguson*, 55 N.C. App. 341, 344, 285 S.E. 2d 288, 291, *disc. rev. denied*, 306 N.C. 383, 294 S.E. 2d 207 (1982). Constructive trusts are imposed in a virtually unlimited variety of situations, *Wilson*, 276 N.C. at 211, 171 S.E. 2d at 882, and under certain circumstances a constructive trust may be imposed despite the fact that it tends to alter or invalidate a judgment. *See Johnson v. Stevenson*, 269 N.C. 200, 204-05, 152 S.E. 2d 214, 217-18 (1967). In such instances the fraud or wrongdoing upon which the injured party relies must be extrinsic or collateral to the judgment, operating " 'not upon matters pertaining to the judgment itself but [relating] to the manner in which it is procured.' " *Id.* at 205, 152 S.E. 2d at 218, quoting A. Freeman 3 *Judgments*, sec. 1233 (1925).

Plaintiff asserts that defendant-husband unduly influenced his decision to sign the "Petition to Renounce." Whether plaintiff's petition is the result of his freely-made decision to renounce or of defendant-husband's undue influence pertains to the

---

2. The relation back of a renunciation is more than a legal fiction. As long as the renouncer receives no fraudulent benefit, his motives for renouncing are immaterial and a valid renunciation will defeat the interests of his judgment creditors. Annot., 27 A.L.R. 472, 477; 80 Am. Jur. 2d Wills Sec. 1598 (1975). *See also Perkins*, 224 N.C. at 798, 32 S.E. 2d at 591; *Reese v. Carson*, 3 N.C. App. 99, 103, 164 S.E. 2d 99, 101 (1968).

manner in which the petition was obtained and is extrinsic to the "Order of Renunciation." Accordingly, plaintiff may maintain an action seeking the declaration of a constructive trust. *Johnson, supra.*

In *Link v. Link*, 278 N.C. 180, 179 S.E. 2d 697 (1971), the Court adopted the following statements regarding equitable relief from transactions based on undue influence:

"In equity there is no rule defining inflexibly what kind or what amount of compulson shall be sufficient ground for avoiding a transaction. * * * The question to be decided in each case is whether the party was a free and voluntary agent. Any influence brought to bear upon a person entering into an agreement or consenting to a disposal of property, which, having regard to the age, capacity of the party, the nature of the transaction, and all the circumstances of the case, appears to have been such as to preclude the exercise of free and deliberate judgment, is considered by courts of equity to be undue influence, and is a ground for setting aside the act procured by its employment." Pollock on Contracts, 524.

"Where there is no coercion amounting to duress, but a transaction is the result of a *moral, social* or *domestic* force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction on the ground of undue influence, even though there may be no invalidity at law. In the vast majority of instances, undue influence naturally has a field to work upon in the conditions or circumstances of the person influenced, which renders him peculiarly susceptible and yielding; his dependent or fiduciary relation towards the one exerting the influence, his mental or physical weakness, his pecuniary necessities, his ignorance, lack of advice, and the like." Pomeroy, Equity Jurisprudence, 951.

*Link,* 278 N.C. at 195-96, 179 S.E. 2d at 706, *quoting Edwards v. Bowden,* 107 N.C. 58, 62-63, 12 S.E. 58, 59 (1890). Thus, whether a party has been unduly influenced is a flexible inquiry based on the facts of each case. Factors relevant to that determination are: (1) the age, health and capacity of the person allegedly unduly in-

fluenced, (2) the nature of the transaction, and (3) the nature of the relation between those involved in the transaction.

Plaintiff's forecast of evidence, viewed in the light most favorable to him, creates a genuine issue as to whether defendant-husband unduly influenced his decision to sign the renunciation.

According to plaintiff, when he signed the renunciation he was physically ill; he was "really suffering with diabetes." His business had recently gone bankrupt. He and his wife had planned to move from Charlotte, North Carolina, where the property in question is located, to Greenville, South Carolina, and as a result he needed someone to attend to the rental property in his absence.

Plaintiff and defendant-husband are brothers and plaintiff "trusted him implicitly." When defendant-husband moved to Charlotte in 1972 he and his wife lived with plaintiff and his wife for several months. Toward the end of 1972 or the beginning of 1973 plaintiff turned the management of the Greenway Avenue property over to defendant-husband, at which time defendant-husband began collecting the rents, paying the mortgage and seeing that the property was maintained.

The "Petition to Renounce" which plaintiff signed was drafted by defendant-husband's lawyers. They were present when plaintiff signed the petition, and they informed him that defendant-husband could not continue to manage the property unless he signed. Defendant-husband's lawyers filed the petition and obtained the "Order of Renunciation." Plaintiff was not represented by counsel.

[5] In addition, while plaintiff does not allege actual fraud, he does allege that a confidential relationship existed between him and his brother and that by virtue of defendant-husband's agreement to manage the Greenway Avenue property for plaintiff, a fiduciary relationship also existed. When a confidential or fiduciary relationship exists, upon the complaint of the party to whom a duty of loyalty is owed a presumption of fraud arises and it becomes incumbent upon the party owing loyalty to demonstrate good faith and fair dealing in the transaction. *Curl v. Key*, 311 N.C. 259, 263-64, 316 S.E. 2d 272, 275; *Link*, 278 N.C. at 192,

179 S.E. 2d at 704; *McNeill v. McNeill,* 223 N.C. 178, 181, 25 S.E. 2d 615, 616-17 (1943); *Stilwell v. Walden,* 70 N.C. App. 543, 546, 320 S.E. 2d 329, 331 (1984); *Rauchfuss v. Rauchfuss,* 33 N.C. App. 108, 114, 234 S.E. 2d 423, 427 (1977). "Any transaction between persons so situated is 'watched with extreme jealousy and solicitude; and if there is found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party.'" *Link,* 278 N.C. at 192, 179 S.E. 2d at 704, *quoting Rhodes v. Jones,* 232 N.C. 547, 548, 61 S.E. 2d 725, 726.

"A confidential or fiduciary relation can exist under a variety of circumstances and is not limited to those persons who also stand in some recognized legal relationship to each other, such as attorney and client, principal and agent . . . [or] guardian and ward . . . ." *Stilwell,* 70 N.C. App. at 546-47, 320 S.E. 2d at 331. A confidential relationship arises "in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906 (1931).

In *Curl,* 311 N.C. 259, 316 S.E. 2d 272, the trial court, sitting as finder of fact, had found that no confidential or fiduciary relationship existed between the parties. The Supreme Court reversed, finding that none of the evidence contradicted the conclusion that there was a fiduciary or confidential relationship. The Court described the relationship between the defendant, Jack Key, and plaintiffs, the Curl children, as follows:

At the time of these events, the Curl children were 16, 17, 18 and 21 years of age . . . .

The plaintiffs had been closely acquainted with Jack Key all of their lives. Known to them as "Uncle Jack," Key had been their father's best friend. They continued to regard him as "a special friend of the family." Key offered to help plaintiffs with their problems in dealing with harassment from outsiders, claiming he could keep troublemakers away if each of the plaintiffs would sign a paper — "a peace paper giving him the right to kick anybody off the land that come there causing any disturbance." . . .

. . . .

The plaintiffs had confidence in Jack Key; he was their friend; they all trusted and believed that he wanted to help them live in peace in their home.

Jack Key himself testified that he had known the Curl family for years. Mr. Curl had taught him to lay brick and they worked together. After Mr. Curl died, Jack Key lived for some time in the house with Lottie Curl and the children. He was a friend of the family's.

*Curl*, 311 N.C. at 261-63, 316 S.E. 2d at 274-75.

Based on the foregoing, we find plaintiff's forecast of evidence, viewed in the light most favorable to him, sufficient to create a genuine issue as to whether a confidential or fiduciary relationship existed between plaintiff and defendant-husband.

[6] Defendants maintain that plaintiff's claim for a constructive trust is barred by the equitable maxim which requires that "he who comes into equity must come with clean hands." "The clean hands doctrine denies equitable relief . . . to litigants who have acted in bad faith or whose conduct has been dishonest, deceitful, fraudulent, unfair or overreaching in regard to the transaction in controversy." *Collins v. Davis*, 68 N.C. App. 588, 592, 315 S.E. 2d 759, 762, *aff'd per curiam*, 312 N.C. 324, 321 S.E. 2d 892 (1984). Thus, " 'where both parties have united in a transaction to defraud another, or others, or the public, or the due administration of the law, or which is against public policy, or *contra bonos mores*, the courts will not enforce it in favor of either party.' " *Hood v. Hood*, 46 N.C. App. 298, 300, 264 S.E. 2d 814, 816 (1980), *quoting York v. Merritt*, 77 N.C. 213, 215 (1877).

Defendant correctly contends that if plaintiff signed the renunciation in an attempt to defraud his judgment creditors, his claim for equitable relief is barred by the clean hands doctrine. *Turner v. Eford*, 58 N.C. (1 Jones Equity) 106 (1859); *Moffett v. Daniels*, 80 N.C. App. 516, 342 S.E. 2d 925 (1986). *See also, Penland v. Wells*, 201 N.C. 173, 159 S.E. 423 (1931); *Powell v. Ivey*, 88 N.C. 256, 261 (1883); *Hood v. Hood*, 46 N.C. App. 298, 264 S.E. 2d 814 (1980). While much of the evidence supports such a conclusion, plaintiff maintains that when he signed the renunciation he believed he had assets which would satisfy the claims of his judgment creditors and that he signed the renunciation so that de-

fendant-husband would continue to manage the property. Plaintiff's averments create a genuine issue of material fact to be determined at trial. *High*, 42 N.C. App. at 711, 257 S.E. 2d at 663.

While plaintiff denies any attempt to defraud his creditors, he admits that at the time he petitioned the court declaring his desire to renounce all interest in the Greenway Avenue property he and defendant-husband had orally agreed that he should retain an equitable interest in the property. Plaintiff's false declarations to the court constitute unclean hands and, standing alone, would bar his equitable remedies. *See Sherner v. Spear*, 92 N.C. 148, 150-51 (1885); *Presnell v. Presnell*, 59 N.C. App. 314, 317, 296 S.E. 2d 519, 521 (1982). However, where a party seeking relief has acted " 'under circumstances of oppression, imposition, hardship, undue influence or great inequality of condition, or age, so that his guilt may be far less in degree than that of his associate in the offense,' " equitable relief is not foreclosed. *Pinkston v. Brown*, 56 N.C. (1 Jones Equity) 494, 496 (1857), *quoting* J. Story, 1 *Equity Jurisprudence* Sec. 300 (1846). We thus hold that — given plaintiff's ill health and financial difficulties, as well as the possibility of a confidential or fiduciary relationship between plaintiff and defendant-husband — there is a genuine issue of material fact as to whether defendant-husband's wrongdoing reduces plaintiff's culpability sufficiently that plaintiff is entitled to equitable relief.

IV.

QUITCLAIM DEED

[7] Plaintiff asserts that defendant-husband fraudulently obtained the quitclaim deed by maintaining that its only purpose was to allow him to obtain a loan to make repairs on the roof. A genuine issue as to whether a confidential or fiduciary relationship existed between plaintiff and defendant-husband is again raised by plaintiff's forecast of evidence. If such a relationship is found, defendant-husband carries the burden of demonstrating his good faith and fair dealing.

In addition, plaintiff's forecast of evidence, viewed in the light most favorable to him, creates a genuine issue as to whether defendant-husband procured the quitclaim deed by fraud. The essential elements of fraud are as follows:

"(1) That defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when he made it, defendant knew that the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that defendant made the representation with intention that it should be acted upon by plaintiff; (5) that plaintiff reasonably relied upon the representation and acted upon it; and (6) that plaintiff thereby suffered injury."

*Lamm v. Crumpler*, 240 N.C. 35, 44, 81 S.E. 2d 138, 145 (1954), *quoting Cofield v. Griffin*, 238 N.C. 377, 379, 78 S.E. 2d 131, 133 (1953); *Childers v. Hayes*, 77 N.C. App. 792, 794, 336 S.E. 2d 146, 148 (1985).

According to plaintiff, defendant-husband represented to him that a new roof was required in order to continue renting the property and that because of plaintiff's outstanding judgments and the questions surrounding the validity of plaintiff's renunciation, defendant-husband could not obtain financing, using the property as collateral, without the quitclaim deed. Plaintiff relied upon defendant-husband's representations and agreed to sign the deed. Defendant-husband's lawyers drafted the deed and sent it to plaintiff for his signature. Plaintiff was subsequently informed by the realtor who handled the property that at the time defendant-husband requested the deed the roof did not need replacing. Plaintiff has visited the property and, although the roof has not been replaced since defendant-husband's request for the deed, in plaintiff's opinion a new roof is not needed. The foregoing, if proven, is sufficient to establish a claim for fraud.

V.

In sum, plaintiff's forecast of evidence, viewed in the light most favorable to him, raises the following genuine issues of material fact:

(1) Did defendant-husband procure plaintiff's renunciation of the property through fraud or undue influence?

(2) If so, is plaintiff entitled to equitable relief from the order of renunciation?

(3) Did defendant-husband obtain plaintiff's quitclaim deed through fraud?

If plaintiff prevails on each of these issues, he is entitled to a declaration that defendants hold the Greenway Avenue property in trust for him. Thus, defendants' motion for summary judgment was improperly granted.

Upon remand for trial allocation of the burden of proof on the first issue depends upon whether a confidential or fiduciary relationship existed between plaintiff and defendant-husband when plaintiff renounced his interest in the property. If the finder of fact determines that such a relationship existed, defendant-husband carries the burden of establishing his good faith and fair dealing. If not, plaintiff carries the burden of demonstrating defendant-husband's undue influence.

If the finder of fact answers the first issue in the affirmative, finding that defendant-husband procured plaintiff's renunciation through fraud or undue influence, it must then decide whether plaintiff's intent in renouncing the property was to defraud his creditors and whether, given his intent and his false declarations in the "Petition to Renounce," he is entitled to equitable relief. In so deciding, it must consider whether, under the circumstances, defendant-husband's wrongdoing reduces plaintiff's culpability sufficiently that plaintiff is entitled to equitable relief.

If the finder of fact answers both the first and second issues in the affirmative, it must then determine whether defendant-husband procured the quitclaim deed through fraud. If at the time plaintiff signed the deed a fiduciary or confidential relationship existed between the parties, defendant-husband carries the burden of demonstrating his good faith and fair dealing regarding the procurement of the deed. Absent such a relationship, plaintiff carries the burden of demonstrating defendant-husband's fraud.

Reversed and remanded.

Judges BECTON and PARKER concur.