IRA FOR THE BENEFIT OF PHILIP V. OPPENHEIMER, AND MORRIS I. KARPEN, PLAINTIFFS v. BRENNER COMPANIES, INC., ABE BRENNER, HERBERT BRENNER, GERTRUDE P. BRENNER, JOSEPH G. CLAUD, AND WACHOVIA BANK & TRUST COMPANY, N.A., AS PERSONAL REPRESENTATIVE OF THE ESTATE OF WADE M. GALLANT, JR., DEFENDANTS

No. 9021SC1124

(Filed 21 July 1992)

1. Corporations § 160 (NCI4th) — freeze-out merger — price of shares — statutory appraisal

A statutory appraisal is a dissenting shareholder's exclusive remedy when the shareholder's objection to a "freeze-out" merger is essentially a complaint regarding the price which he received for his shares. N.C.G.S. § 55-113 (1982).

Am Jur 2d, Corporations §§ 2574, 2576.

2. Corporations § 160 (NCI4th) — freeze-out merger — claims for unfairness, breach of fiduciary duty, fraud — price of shares — summary judgment — statutory appraisal

The trial court did not err in granting summary judgment for defendant corporate directors on plaintiff minority shareholders' claims alleging unfairness of a "freeze-out" merger, breach of fiduciary duty, and actual and constructive fraud where plaintiffs' forecast of evidence related only to the price paid for their shares and the valuation method. Accordingly, the essence of the disagreement between the parties, the price of the shares, would more appropriately be resolved in a statutory appraisal proceeding.

Am Jur 2d, Corporations §§ 2507 et seq.

Valuation of stock of dissenting stockholders in case of consolidation or merger of corporation, sale of its assets, or the like. 48 ALR3d 430.

3. Corporations § 160 (NCI4th) — action contesting freeze-out merger — financial information — denial of discovery — consideration in statutory appraisal proceeding

In an action contesting a "freeze-out" corporate merger, the trial court did not err in denying plaintiff minority shareholders' motions to compel discovery of the corporation's pre-merger and post-merger financial information where plain-

tiffs sought the pre-merger information to demonstrate the increased value of their stock and the post-merger information to show the stock's future value, since the requested information dealt with the value of the stock and should be considered in the statutory appraisal proceeding.

**Am Jur 2d, Corporations §§ 2574, 2576.**

APPEAL by plaintiffs from Order entered 12 July 1990 by *Judge William H. Freeman* in FORSYTH County Superior Court. Heard in the Court of Appeals 14 May 1991.

*Clark & Wharton, by David M. Clark and B. Douglas Martin; and Lowey, Dannenberg, Bemporad & Selinger, P.C., by Richard C. Fooshee, for plaintiff appellants.*

*Womble Carlyle Sandridge & Rice, by William C. Raper and Timothy G. Barber. for defendant appellees.*

COZORT, Judge.

Plaintiffs, minority shareholders of stock in defendant corporation, filed suit in superior court contesting the forced sale of the minority shareholders' stock, commonly referred to as a corporate "freeze-out." The trial court granted summary judgment in favor of defendant corporation and the company's majority shareholders. We find the principal issue raised by plaintiffs' claims concerns the value of the stock and that the statutory appraisal proceeding provided in N.C. Gen. Stat. Chapter 55 (now Chapter 55A) is plaintiffs' exclusive remedy. We affirm summary judgment for defendants.

Defendant Brenner Companies, Inc., ("Brenner") is a North Carolina public corporation in the business of processing and recycling metal, fabricating steel, and manufacturing commercial refuse containers. The remaining defendants acted as Brenner's Board of Directors ("Board") at the time when plaintiffs filed their lawsuit. The plaintiffs' suit resulted from events which occurred preceding and following a "cash out" of Brenner stock held by minority shareholders. The "cash out," commonly known as a "freeze-out" or "squeeze-out" merger, was orchestrated by defendants and began several years prior to 1988.

In 1978, Brenner's sale of its trash collection division resulted in a limited public market for its stock. Due to the limited public demand for its common stock, in 1979 Brenner implemented a repur-

chase program to acquire shares held by non-family shareholders in 1979. In November 1987, the Securities and Exchange Commission ("SEC") notified Brenner that the company could not repurchase additional stock without complying with federal regulations governing "going-private" transactions. Subsequent to the SEC's ruling, the Board decided in December 1987 to eliminate remaining public shareholders in a "freeze-out" merger to become completely private.

The Board enlisted the services of Interstate Securities Corporation ("Interstate") to provide a valuation of the company in March 1988. Interstate presented two valuation reports to defendants, one dated 18 April 1988, and another dated 11 May 1988. The April 18 report included three different valuation methods which priced Brenner's common stock between $15.93 and $19.12 per share. On 20 April 1988, three directors voted to set the merger stock price at the median of Interstate's valuation, or $17.50 per share. The Board then asked Interstate to complete a fairness study of the $17.50 price. Interstate reviewed the price by utilizing eight different valuation methods; none of the resulting figures exceeded the $17.50 price per share. On 11 May 1988, the Board approved the merger at $17.50 per share, nearly double the previous market price of the stock.

After learning of the merger, plaintiffs, as minority shareholders, believed the price of the stock to be "ridiculously low." As a result, plaintiffs filed this suit on 23 May 1988 alleging that defendants committed fraud and breach of fiduciary duty. Plaintiff Oppenheimer moved for a preliminary injunction to enjoin the merger on 11 October 1988; the motion was denied on 27 October 1988. The merger, approved by 92% of the minority shares, was completed thereafter. During discovery, plaintiffs filed motions to compel disclosure of Brenner's pre- and post-merger financial information; both motions were denied. Defendants filed a motion for summary judgment on 4 May 1990. The trial court granted defendants' motion for summary judgment on 12 July 1990. Plaintiffs appeal.

On appeal, plaintiffs argue five assignments of error. First, plaintiffs contend that a statutory appraisal is not their exclusive remedy to redress their dissatisfaction with the merger's stock price per minority share. In their second, third, and fourth assignments of error, plaintiffs contend summary judgment was improper because issues of material fact existed as to (1) the fairness

IRA EX REL. OPPENHEIMER v. BRENNER COMPANIES, INC.

[107 N.C. App. 16 (1992)]

of the merger, (2) breach of fiduciary duty by defendants, and (3) commission by defendants of actual or constructive fraud, or both. Finally, plaintiffs contend that the trial court erred in denying plaintiffs' motions to compel discovery of Brenner's pre- and post-merger financial information. We affirm.

[1] We first address the issue presented concerning whether a statutory appraisal is plaintiffs' exclusive remedy to contest their right to receive fair value of the shares subject to the "freeze-out." Plaintiffs contend that a statutory appraisal is not their exclusive remedy to redress what the minority shareholders perceived to be as an inadequate price for their shares. The applicable statute in effect when plaintiffs filed their cause of action, N.C. Gen. Stat. § 55-113 (1982),[1] states:

> (b) . . . [A]ny shareholder of a corporation effecting a merger, consolidation or sale of assets for shares may give to the corporation, prior to or at the meeting of the shareholders to which the proposal of amendment, dissolution, merger, consolidation or sale of assets for shares is submitted to a vote, written notice that he objects to such proposal. Within 20 days after the date on which the vote was taken, such shareholder may, unless he voted in person or by proxy in favor of the proposal, make written demand on the corporation for payment of the fair value of his shares. Such demand shall state the number and class of shares owned by him. In addition to any other right he may have in law or equity, a shareholder giving such notice shall be entitled, if and when the amendment, dissolution, merger, consolidation or sale of assets for shares is effected, to be paid by the corporation the fair value of his shares, as of the day prior to the date on which the vote was taken, subject only to the surrender by him of the certificate representing his shares.
>
> * * * *

---

1. On 1 July 1990, the North Carolina Corporation Act, codified in Chapter 55 of the General Statutes, became effective. Under the new Act, N.C. Gen. Stat. § 55-13-02 (1990) explains a shareholder's right to dissent. N.C. Gen. Stat. § 55-13-02(b) now establishes the exclusivity of a dissenting shareholder's remedy in challenging a corporation's actions. "The remedy is the exclusive remedy unless the transaction is 'unlawful' or 'fraudulent.' " See N.C. Gen. Stat. § 55-13-02 (1990), Official Comment 2, Exclusivity of Dissenters' Rights. Our decision today makes no effort to discuss the result of an application of new Chapter 55 to the facts in the case below.

(d) If within 30 days after the date upon which the objecting shareholder becomes entitled to payment of his shares . . . the value of the shares is agreed upon between the shareholder and the corporation, payment therefor shall be made within 60 days after the agreement, . . .

(e) If within the 30-day period mentioned in subsection (d) of this section the shareholder and the corporation do not agree as to the value of the shares the shareholder may, within 60 days after the expiration of the 30-day period, file a petition in the superior court of the county of the registered office of the corporation asking for the appointment by the clerk of three qualified and disinterested appraisers to appraise the fair value of the shares. . . . The award of the appraisers, or a majority of them, if no exceptions be filed thereto within 10 days after the award shall have been filed in court, shall be confirmed by the court, and when confirmed shall be final and conclusive, and the shareholder upon depositing the proper share certificates in court, shall be entitled to judgment against the corporation for the appraised value thereof as of the date prescribed in this section, together with interest thereon to the date of such confirmation. If either party files exceptions to such award within 10 days after the award shall have been filed in court, the case shall be transferred to the civil issue docket of the superior court for trial . . . .

We acknowledge that a statutory appraisal is *not* a dissenting shareholder's exclusive remedy when the shareholder has presented claims of breach of fiduciary duty, fraud, self-dealing, securities violations, or similar claims based on allegations other than solely the inadequacy of the stock price. *See Austell v. Smith*, 634 F.Supp. 326 (W.D.N.C.), *appeal dismissed*, 801 F.2d 393 (4th Cir. 1986); *Umstead v. Durham Hosiery Mills, Inc.*, 578 F.Supp. 342 (M.D.N.C. 1984). In both *Austell* and *Umstead*, the courts held that the statutory appraisal remedy was not exclusive where the plaintiffs alleged claims challenging corporate action in a "freeze-out" merger, and such claims were based on allegations other than just the inadequacy of price. *Austell*, 634 F.Supp. at 330; *Umstead*, 578 F.Supp. at 345. We also agree that a statutory appraisal remedy "may not be adequate [as] in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. Supr. 1983). *See also Walk*

*v. Baltimore & Ohio R.R.*, 847 F.2d 1100 (4th Cir. 1988), *vacated on other grounds*, 492 U.S. 914, 106 L.Ed.2d 583 (1989); *Rosenstein v. CMC Real Estate Corp.*, 168 Ill. App. 3d 92, 522 N.E.2d 221 (1988).

The issue of whether a statutory appraisal is a dissenting shareholder's exclusive remedy when the shareholder challenges *only* the fair value or price of the stock is one of first impression in our State. Consequently, we consider the law of other jurisdictions in arriving at our decision. In *Schloss Assoc. v. Chesapeake & Ohio Ry. Co.*, 73 Md. App. 727, 536 A.2d 147 (Md. Ct. Sp. App. 1988), the court determined that a remedy beyond the statutory appraisal procedure was not available where the shareholders' objection to a "freeze-out" merger was "essentially a complaint over price—the amount and how it was established—for which the statutory appraisal right is a wholly adequate remedy." *Schloss*, 73 Md. App. at 748, 536 A.2d at 158.

We find the court's rationale in *Schloss* persuasive. The court in *Schloss* determined that Md. Code Ann. Corp. & Ass'ns § 3-106(d), a statute similar to N.C. Gen. Stat. § 55-113, provided an exclusive remedy to shareholders when the shareholders' primary challenge concerned the fair price of the stock. The Maryland statute, like N.C. Gen. Stat. § 55-113, permits a dissenting minority shareholder to demand and receive payment of the fair value of his stock when a corporate merger has occurred. Md. Code Ann. Corp. & Ass'ns § 3-106(d) (1985). The *Schloss* court held the plaintiffs' allegations of fraud were entirely too general and concluded the dispute over the stock value could be resolved through the statutory appraisal process. We agree that a "remedy beyond the statutory procedure is not available where the shareholder's objection is essentially a complaint regarding the price which he received for his shares." *Stepak v. Schey*, 553 N.E.2d 1072, 1075 (Ohio 1990). Here, as in *Schloss*, the record indicates that plaintiffs' primary complaint concerning the merger dealt with the stock price. As will be discussed below, plaintiffs have not alleged sufficient facts to make out claims for unfairness of the merger, breach of fiduciary duty, and fraud separate and apart from the plaintiffs' concerns over price. Therefore, although "special, compelling circumstances may justify alternative relief in other freeze-out situations," *Schloss*, 73 Md. App. at 740, 536 A.2d at 154, we adopt the reasoning in *Schloss* and find in the present case that the statutory appraisal remedy in N.C. Gen. Stat. § 55-113 was the plaintiffs' exclusive remedy.

[2] Plaintiffs contend the trial court erred in granting summary judgment for defendants as to plaintiffs' claims alleging unfairness of the merger, breach of fiduciary duty, and actual and/or constructive fraud. Our standard of reviewing a trial court's ruling on summary judgment is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, indicate there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Salt v. Applied Analytical, Inc.*, 104 N.C. App. 652, 412 S.E.2d 97 (1991), *disc. review denied*, 331 N.C. 119, 415 S.E.2d 200 (1992). In order for the party opposing summary judgment to prevail, "once [the moving] party satisfies his burden in moving for summary judgment . . . [t]he opposing party must come forward with facts, not mere allegations, which controvert the facts set forth in the moving party's case." *Econo Travel Motor Hotel Corp. v. Taylor*, 301 N.C. 200, 204, 271 S.E.2d 54, 57 (1980). After careful review of the pleadings, depositions, affidavits, and other materials in the record, we conclude the trial court properly granted summary judgment for defendants as to plaintiffs' claims.

In essence, plaintiffs' complaint asks for compensatory and punitive damages based on one of the following theories: unfairness of the merger, breach of fiduciary duty, and actual and/or constructive fraud. First, plaintiffs contend the defendants "acted unfairly to the members of the class by appropriating for the Brenner family the assets of the Company, by eliminating the public shareholders of the Brenner Companies at an inadequate price and as a result of unfair dealing." There are two aspects of fairness, fair dealing and fair price. *Weinberger*, 457 A.2d at 711. Here, plaintiffs have only alleged facts questioning the fairness of price as being the basis for any unfair dealing. Plaintiffs' only allegations of dishonesty and bad faith are related to price. In fact, plaintiffs' individual depositions reveal the primary point of contention for the minority shareholders was price alone. This Court has determined that the inadequacy of price in and of itself does not support claims for oppression, artifice, fraud, or undue advantage. *Short v. Bryant*, 97 N.C. App. 327, 329, 388 S.E.2d 205, 206 (1990). Moreover, we believe that an unfair price alone does not render a merger suspect. Under the circumstances, because plaintiffs have not presented specific facts of misconduct to show a genuine issue of material fact, *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d

888, 890 (1984), summary judgment was properly granted as to plaintiffs' claim for unfairness of the merger.

Second, plaintiffs argue summary judgment was improper because material facts existed as to whether defendants breached their fiduciary duty to plaintiffs. Clearly, the officers and directors of a corporation owe a fiduciary duty to their shareholders. N.C. Gen. Stat. § 55-35 (1982). Plaintiffs raise several questions regarding the defendants' actions. However, each of plaintiffs' contentions may once again be traced to a dispute over the value of the minority shares—a question to be determined at a statutory appraisal proceeding. For example, plaintiffs contend that Interstate's valuation of the company was improperly conducted because the Board failed to provide Interstate with information sufficient to do an accurate valuation. The record indicates otherwise. The dispute over the method of valuation is a dispute over price and is better left to an appraisal action.

Plaintiffs additionally challenge the Board's lack of soliciting third-party buyers. The lack of soliciting third-party buyers does not render a merger suspect; it is only when a board fails to properly investigate the worth of the company that suspicion is aroused. *Smith v. Van Gorkum*, 488 A.2d 858, 873 (Del. Supr. 1985). In the present case, Brenner's actions did not indicate a failure to properly investigate the value of the company. Rather, Brenner hired an independent evaluator, Interstate, to study Brenner's worth and to subsequently direct a fairness study of the price per share of stock in relation to the merger and minority shareholders' interests. Plaintiffs also attack Interstate's use of tax assessments as indicators of Brenner's value. This allegation also has no merit. Interstate's use of tax assessments was not improper, since tax assessments are one aspect of assessing the company's property and Interstate employed the most current tax assessment available in its valuation.

Plaintiffs further allege that Interstate was engaged to conduct the fairness opinion only *after* the Board heard Interstate's opinion and had approved the merger. Plaintiffs' contentions again have no merit. The formal engagement letter with Interstate was signed on 3 May 1988. The fairness opinion was rendered 11 May 1988. The Board merely ratified the officers' actions in executing the 3 May contract at the 11 May meeting.

IRA ex rel. OPPENHEIMER v. BRENNER COMPANIES, INC.

[107 N.C. App. 16 (1992)]

Plaintiffs finally argue that the non-family Board members breached their fiduciary duty to protect the minority shareholders by failing to investigate the validity of the Interstate reports as to the worth of Brenner stock. Once more, plaintiffs' complaint is grounded on the price received for minority shares. Summary judgment was proper for defendants on plaintiffs' allegations of breach of fiduciary duty.

Finally, plaintiffs contend that summary judgment was improper because issues of material fact were present as to whether defendants committed actual or constructive fraud or both. Plaintiffs claim that the "defendants concealed material facts from the public and made material misrepresentations of fact," by "engag[ing] in a plan and scheme to defraud" minority shareholders. The elements of fraud are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Plaintiffs point only to the proxy statements as evidence of the fraudulent misrepresentations. Representations in a proxy statement evidencing the opinion of a corporation constitute fraud if they meet all of the elements of fraud. Mere opinions will not support a claim of fraud. *Early v. Eley*, 243 N.C. 695, 698, 91 S.E.2d 919, 921 (1956). Because the proxy statement was issued on 8 September 1988, which was subsequent to the filing of plaintiffs' action, we look only to plaintiffs' amended complaint in reviewing their claims of fraud. The amended complaint shows that plaintiffs' claim for actual fraud was grounded only in their dissatisfaction with the price paid for their shares and with the valuation procedure. As we noted earlier, inadequate price alone will not support a claim for fraud. *Short*, 97 N.C. App. at 329, 388 S.E.2d at 206.

Plaintiffs also allege constructive fraud. "[C]onstructive fraud is established when proof is presented that a position of trust and confidence was taken advantage of to the hurt of the other." *Stilwell v. Walden*, 70 N.C. App. 543, 546, 320 S.E.2d 329, 331 (1984). Plaintiffs have presented no evidence to demonstrate any harm suffered by the shareholders other than the damage from the price they received for their minority shares. Therefore, plaintiffs' constructive fraud claim also must fail. In conclusion, plaintiffs have not presented facts to support any of their underlying theories for recovery other than that of a challenge to the stock value.

Accordingly, we find the essence of the disagreement between the parties, the price of the shares, would be more appropriately resolved in a statutory appraisal proceeding. For these reasons, the trial court correctly entered summary judgment for defendants.

[3] Plaintiffs' final assignment of error deals with the trial court's denial of two motions to compel discovery of Brenner's pre- and post-merger financial information. Plaintiffs argued the information was relevant on the issue of fair price, improper gain, and lack of good faith in causing the merger. The trial court denied the motions due to their irrelevancy. The post-merger financial information does not affect Interstate's findings made prior to the merger. However, N.C. Gen. Stat. § 55-113(b) (1982) provides for the valuation of a going business the day prior to the merger. Thus, on the surface it appears Brenner's pre-merger financial information is relevant. However, it is important only as to *price*. Since plaintiffs discuss only the use of the pre-merger information to demonstrate the increased value of the stock and the use of the post-merger information to show the stock's future value, these issues influencing the price should be determined in the statutory appraisal proceeding. The trial court did not err in denying the motions to compel.

To sum up, the trial court did not err in granting summary judgment in favor of the defendants because (1) a review of the materials submitted for summary judgment indicates the plaintiffs were primarily disputing the price received for their minority shares, the exclusive remedy for which lies in a statutory appraisal proceeding; (2) plaintiffs have not alleged specific facts to support their claims of unfairness of the merger, breach of fiduciary duty, and fraud; and (3) the information requested by the motions to compel also dealt with value of the stock and could be additionally considered in the appraisal proceeding.

The trial court's entry of summary judgment for defendants is

Affirmed.

Judges ORR and WYNN concur.