In re Pike Corp. S'holder Litig., 2015 NCBC 90.

STATE OF NORTH CAROLINA

COUNTY OF SURRY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14-CVS-1202 (Master File);
14-CVS-1031;
14-CVS-1127;
14-CVS-1161

In re Pike Corp. Shareholder Litigation

ORDER GRANTING AWARD OF
ATTORNEYS' FEES

{1}     THIS MATTER is before the Court on that portion of Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class, Appointment of Class Representative and Class Counsel, and Award of Attorneys' Fees and Expenses ("Motion") that seeks attorneys' fees in connection with the settlement of this consolidated class-action litigation ("Settlement").  The Court has today by separate order approved the Settlement, certified the Settlement class, and approved the appointment of class representative and class counsel.  The Settlement is expressly independent of the Court's determination of the award for attorneys' fees that is now before the Court.  For the reasons discussed below, the Court now approves an aggregate award that includes both expenses and attorneys' fees in the total amount of $550,000.00.

*Kessler Topaz Meltzer & Check, LLP by J. Daniel Albert, and Schiller & Schiller, PLLC by David G. Schiller for Plaintiffs Annabelle Umberger and Michael Orban.*

*Lewis & Roberts, PLLC by Paul R. Dickinson, Jr., for Plaintiff Collin Lieberg.*

*Hausler Law Firm, PLLC by Kurt F. Hausler and Rigrodsky & Long, P.A. by Brian D. Long for Plaintiff Edwin Beickert.*

*Moore & Van Allen PLLC by Gregory J. Murphy, Scott M. Tyler, Glenn E. Ketner, III, and Mark A. Nebrig for Defendants Pike Corporation, J. Eric Pike, Charles E. Bayless, James R. Helvey, III, Peter Pace, Daniel J. Sullivan, and James L. Turner.*

*Robinson, Bradshaw & Hinson, P.A. by Robert W. Fuller, Edward F. Hennessey, IV, and Adam K. Doerr, and Dechert, LLP by Stuart T. Steinberg for Defendants Court Square Capital Partners, Pioneer Parent, Inc., and Pioneer Merger Sub, Inc.*

Gale, Chief Judge.

## I.     BACKGROUND

{2}     Plaintiffs in the various consolidated actions, Annabelle Umberger, Michael Orban, Collin Lieberg, and Edwin Beickert are former shareholders of Defendant Pike Corporation ("Pike").

{3}     On August 4, 2014, Pike announced that it had entered into a merger agreement with Pioneer Parent, Inc. ("Pioneer Parent"), an affiliate of Court Square Capital Partners.  Under the merger agreement, Pioneer Parent would acquire Pike for twelve dollars in cash per share of Pike common stock, and Pike's Chairman and Chief Executive Officer, J. Erik Pike, would roll over his shares in exchange for shares in Pioneer Parent.  Pike's Board of Directors formed a special committee, which retained Merrill Lynch, Pierce, Fenner & Smith Inc. ("BofA") as its financial advisor.

{4}     Four shareholder class-action lawsuits were filed between August 19, 2014, and September 25, 2014.  Pike filed a preliminary proxy statement on September 19, 2014.  Each of the four class-action lawsuits was designated as a complex business case and assigned to this Court between September 26, 2014, and October 2, 2014.  The four lawsuits include *Orban v. Pike Corp.*, No. 14 CVS 1031 (filed Aug. 19, 2014; designated and assigned Oct. 2, 2014), *Lieberg v. Pioneer Parent, Inc.*, No. 14 CVS 1127 (filed Sept. 8, 2014; designated and assigned Oct. 2, 2014), *Beickert v. Pike*, No. 14 CVS 1161 (filed Sept. 17, 2014; designated and assigned Oct. 2, 2014), and *Umberger v. Pike Corp.*, No. 14 CVS 1202 (filed Sept. 25, 2014; designated Sept. 26, 2014; assigned Sept. 30, 2014).[1]

---

[1] Section 7A-27(a)(2) of the North Carolina General Statutes provides that appeal lies of right directly to the Supreme Court of North Carolina for cases that are designated as complex business cases on or after October 1, 2014.  N.C. Gen. Stat. § 7A-27(a)(2) (amended 2015).

{5} Each of the class-action complaints alleged breaches and aiding and abetting breaches of fiduciary duties in connection with the merger, and included both process claims and disclosure claims. Specifically, Plaintiffs challenged that members of Pike's Board of Directors omitted substantial, material information from the preliminary proxy statement and made misleading disclosures, which led to an inadequate merger consideration.

{6} On September 29, 2014, Plaintiff Umberger filed a Motion for Expedited Proceedings. By consent, the Court entered a Consolidation Order that designated the Umberger Class Action Complaint as the operative complaint, appointed Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel, and appointed Schiller & Schiller, PLLC as Liaison Counsel. Two of the four class-action complaints included a derivative action; the Umberger Class Action Complaint did not.[2]

{7} On November 10, 2014, the parties reached an agreement regarding expedited discovery. Lead Counsel then conducted document and deposition discovery, which included document discovery requests and depositions of BofA.

{8} Pike filed its definitive proxy statement on November 18, 2014, which included certain disclosures that, according to Plaintiffs, resolved some of the disclosure deficiencies that were detailed in the Umberger Class Action Complaint. Pike set a shareholder vote to approve the merger for December 18, 2014.

{9} On November 20, 2014, Plaintiffs deposed Pike's lead independent director and chairman of the special committee that was charged with reviewing the merger transaction. On November 26, 2014, Plaintiffs filed a Motion for

---

[2] The Court makes its award based on the voluntary Stipulation of the parties rather than on the basis of statutory authority. As such, the Court does not separately consider whether it could or should award attorneys' fees based on any derivative claim where (1) the Umberger Class Action Complaint, designated as the operative complaint, did not include a derivative claim, and (2) even though the class-action complaints in *Beickert* and *Lieberg* included derivative claims, these claims were brought prior to the expiration of the required ninety-day period following the presentation of a demand to Pike's Board, and without the Board having responded to the demand. *See* N.C. Gen. Stat. § 55-7-42(1), (2) (2013). The Court then notes but does not decide whether, under those facts, a derivative proceeding had actually "commence[d]." *Id.* § 55-7-42. Those statutory considerations will have to be considered if an appellate court determines that the Stipulation does not provide an adequate basis for the award of attorneys' fees.

Preliminary Injunction. The Court granted Plaintiffs leave to file a supporting brief following the Thanksgiving holiday and set a hearing for December 10, 2014.

{10} The parties reached an agreement-in-principle to resolve all claims on December 1, 2014, and executed a Memorandum of Understanding ("MOU") on December 8, 2014. Consistent with the MOU, Pike made supplemental disclosures by filing a Form 8-K with the SEC on December 9, 2014.

{11} Pike's shareholders approved the merger by vote on December 18, 2014.

{12} After the shareholder vote, Plaintiffs secured and reviewed approximately 120,000 pages of additional documents. On May 8, 2015, the parties executed a Stipulation and Agreement of Compromise, Settlement and Release ("Stipulation"), and Plaintiffs filed an Unopposed Motion for Preliminary Approval of Settlement, Certification of Settlement Class, Approval of Class Notice and Final Approval Hearing Scheduling. On May 12, 2015, the Court issued its Order Preliminarily Approving Settlement and Providing for Notice, and set the matter for a final fairness hearing on August 26, 2015.

{13} At the fairness hearing on August 26, 2015, the Court thoroughly considered whether Plaintiffs' counsel reasonably determined that a settlement based on disclosures only and without further monetary relief was reasonable, fair, and adequate. After considering evidence and factors regarding the fairness and adequacy of relief obtained on behalf of the settlement class, the form of the release, and the preservation of any appraisal remedy, the Court indicated its position that the Settlement was in the best interest of the class, and that it would certify a non-opt-out class for purposes of the Settlement. The Court reserved further consideration of whether to award attorneys' fees and, if so, in what amount.

{14} At the time of the fairness hearing, the question of whether a North Carolina trial court has the authority to award attorneys' fees as part of a class-action settlement in the absence of additional statutory authority was before the North Carolina Court of Appeals. This Court earlier noted this unsettled question while assuming that it had the authority to approve fees of an uncontested amount

so long as the Court found them to be reasonable. *In re Harris Teeter*, 2014 NCBC LEXIS 47, at \*22 (N.C. Super. Ct. Sept. 24, 2014). The terms of the Stipulation now before the Court are different in that here, there has been no agreement by Defendants not to contest the amount of fees that Plaintiffs' counsel requests for an aggregate award.

## II.    PLAINTIFFS' REQUESTED AWARD

{15}    Plaintiffs' counsel requests an aggregate award of $550,000.00 for efforts by all class counsel, which includes reimbursement for expenses. Defendants agreed only that they would not contest an award of up to $275,000.00, and they now claim that the Court cannot and should not award any greater amount. Plaintiffs contend that the Court has the authority to award any amount that it deems reasonable based on Defendants' undertakings in the Stipulation. Defendants contend that the Court's only authority to award fees depends on the agreement, and Defendants have only agreed to pay the lesser amount.[3]

{16}    The North Carolina Court of Appeals issued its opinion in *Ehrenhaus v. Baker* on September 15, 2015, which followed an earlier appeal regarding the class settlement. *Ehrenhaus v. Baker* (*Ehrenhaus II*), Nos. COA14-1201, COA14-1083, 2015 N.C. App. LEXIS 771 (N.C. Ct. App. Sept. 15, 2015); *Ehrenhaus v. Baker* (*Ehrenhaus I*), 216 N.C. App. 59, 717 S.E.2d 9 (2011).

### A.    The Parties' Agreements

{17}    The parties addressed the issue of attorneys' fees in the MOU and in the final Stipulation. Paragraph twelve of the MOU reads, in relevant part, as follows:

---

[3] The Court recognizes a practical consideration that Defendants' position creates, if adopted. Class counsel generally recognize that, for ethical reasons, counsel cannot negotiate for a fee award until the settlement of class claims has been resolved. That is, plaintiffs' counsel typically seeks to avoid a potential conflict of interest by deferring any fee negotiation until a settlement on the class claims that is not dependent on the fee award has been reached. If the Court's authority to award fees is limited to the amount that defendants actually agreed to after the class settlement has already been reached, class counsel has little practical leverage other than insisting that defendants negotiate in good faith.

Plaintiffs intend to file a petition for an award of attorneys' fees and reimbursement of expenses with the Court. It is Plaintiffs' counsel's position that they are entitled to reasonable attorneys' fees and reimbursement of expenses. Defendants agree that the Supplemental Disclosures were solely caused by Plaintiffs' initiation and prosecution of their claims as set forth in the Consolidated Action, and that such Supplemental Disclosures constitute valid consideration to Pike and its shareholders. After agreeing upon all material terms attendant to the Settlement, the Parties will negotiate in good faith regarding the amount of the attorneys' fees, costs, and expenses to be paid to Plaintiffs' counsel in the Consolidated Action, subject to approval of the Court (the "Agreed-to Fee"). Defendants shall not object to or oppose any application for fees made by Plaintiffs' counsel in the Consolidated Action, provided that such application is for an award no greater than the amount of the Agreed-to Fee. If the Parties reach agreement on an Agreed-to Fee, then in no event shall Defendants be obligated to pay Plaintiffs' counsel's attorneys' fees and expenses in excess of the Agreed-to Fee in connection with the Settlement. If the Parties are unable to reach agreement with respect to the amount of such attorneys' fees, costs, and expenses to which Plaintiffs' counsel are entitled, then Plaintiffs reserve the right to submit an application for an award of attorneys' fees, costs, and expenses to be paid to Plaintiffs' counsel (the "Contested Fee Application") and Defendants reserve the right to object to the amount of such application, but in no event will Defendants argue that Plaintiffs are (i) not entitled to any award of fees, costs, and expenses or (ii) entitled to an award of fees, costs and expenses in an amount less than the highest award of fees, costs and expenses that Defendants propose during good faith negotiations over an Agreed-to Fee. In the event of a Contested Fee Application, Defendants agree to pay whatever award of attorneys' fees, costs and expenses that the Court awards. . . . Any failure by the Court to approve the amount of such fees shall not affect the validity of the terms of the Settlement. . . . Resolution of Plaintiffs' petition for attorneys' fees and expenses shall not be a precondition to the consummation of the Settlement or the dismissal with prejudice of the Consolidated Action.

(Pls.' Mot. Final Approval of Settlement Ex. C ¶ 12, at 17–19.)

{18} The parties then executed the final Stipulation, prior to which the parties were unable to reach an agreed-to fee award request. Paragraph nineteen of the Stipulation provides as follows:

Plaintiffs intend to file a petition to approve payment of attorneys' fees and reimbursement of expenses with the Court. It is Plaintiffs' counsel's position that they are entitled to reasonable attorneys' fees and reimbursement of expenses. Defendants agree that the Supplemental Disclosures were solely caused by Plaintiffs' initiation and prosecution of their claims as set forth in the Consolidated Action, and that such Supplemental Disclosures constitute material benefit to Pike and its shareholders. After agreeing upon all material terms attendant to the Settlement, the Parties negotiated in good faith regarding the amount of the attorneys' fees, costs, and expenses to be paid to Plaintiffs' counsel in the Consolidated Action, subject to approval of the Court. The Parties at present have been unable to reach agreement on the amount of attorneys' fees, costs and expenses to be paid to Plaintiffs' counsel, and pursuant to the MOU, Plaintiffs will make a contested fee application to the Court (the "Contested Fee Application"). The parties agree that they will continue to seek to negotiate the Contested Fee Application in good faith in an attempt to reach a resolution prior to the Settlement Hearing. In connection with the Contested Fee Application, Pike, its successor in interest, and/or the insurer(s) of Pike, or its successor in interest, on behalf of all Defendants, agree to pay whatever award of attorneys' fees, costs and expenses that the Court approves, and shall not argue that Plaintiffs are (i) not entitled to any award of attorneys' fees, costs, and expenses or (ii) entitled to an award of attorneys' fees less than $275,000. The parties further intend to, and do, reserve all arguments in connection with the Contested Fee Application to the extent those arguments do not contradict anything in this Stipulation or the Memorandum of Understanding.

(Pls.' Mot. Final Approval of Settlement Ex. A ¶ 19, at 17–18.)

## B.     Plaintiffs' Contested Request for an Aggregate Award

{19}     The notice of settlement that was sent to class members indicated that Plaintiffs' counsel would seek an aggregate award of up to $595,000.00 for attorneys' fees and expenses. No class member has objected to the Settlement or to Plaintiffs' request for this aggregate award. The highest amount that Defendants have offered during negotiations as an aggregate award is $275,000.00.

{20}     Plaintiffs subsequently reduced their request for fees and expenses from $595,000.00 to $550,000.00, which Lead Counsel indicates was to eliminate any potential duplication of effort by various class counsel. Plaintiffs submitted a

Contested Fee Application for $550,000.00, which includes $35,686.64 of out-of-pocket expenses, with supporting affidavits.

### C. Evidence Offered in Support of Plaintiffs' Request

{21} Although Plaintiffs did not submit the underlying billing records, J. Daniel Albert of the firm Kessler Topaz reviewed records and submitted affidavits to support Plaintiffs' application for an aggregate award. Mr. Albert filed his initial affidavit on July 15, 2015, which summarized in chart form the time spent by each of the firms that represented the class prior to May 12, 2015, segregated by category of effort. As Lead Counsel, Kessler Topaz spent a total of 940 hours. Kessler Topaz's normal billing rates range from $250.00 per hour for legal assistants to $725.00 per hour for partners. These hours, multiplied by the attorneys' respective regular hourly rates, represent total fees of $523,381.25 for Lead Counsel alone. Mr. Albert submitted affidavits from counsel at the other firms to show the time spent by other counsel. The total time spent by all firms that represented Plaintiffs' class equaled 1394.60 hours. That number, multiplied by the attorneys' normal hourly billing rates reflected in the affidavit, equals $744,986.75.

{22} Class counsel incurred expenses totaling $35,686.64.

{23} The requested aggregate award of $550,000.00 then represents total attorneys' fees of $514,313.36 ($550,000.00 less $35,686.64 in expenses). This would represent a blended average billing rate of $547.14 per hour if calculated with respect to the 940 hours spent by attorneys and staff of Lead Counsel only, and a blended average billing rate of $368.79 if calculated to reflect all time spent by all Plaintiffs' counsel. Conversely, the Defendants' position represents total fees of $239,313.36 ($275,000.00 less expenses). The respective average hourly billing rates similarly calculated would be $254.59 and $171.60. If time for legal assistants is excluded, calculated average hourly billing rates for total attorney time of all class counsel would be $413.00 per hour based on Plaintiffs' requested awarded and $192.00 per hour based on Defendants' position.

{24}    Lead Counsel's regular billing rates exceed the rates that are generally charged in North Carolina.  The Court has therefore analyzed the amounts using standard billing rates that are more customary in North Carolina.  Using a partner rate of $550.00 per hour and an associate or of-counsel rate of $250.00 per hour, the total fees for time spent by attorneys at the Lead Counsel firm would be approximately $350,000.00.  The time spent by attorneys at other firms was all billed by partners.  If that time was billed at $375.00 per hour, the total billing would be approximately $170,000.00.  The total attorneys' fees and expenses so calculated would roughly equal Plaintiffs' request for an aggregate award of $550,000.00.

{25}    The Court has also carefully considered Defendants' suggestion that there has been an unnecessary duplication of effort by the prosecution of four separate actions.  Mr. Albert filed a supplemental affidavit on August 31, 2015, which reflects that the total of 1394.60 hours spent by Plaintiffs' counsel includes only 102.75 hours spent by Plaintiff Beickert's counsel, and 36.5 hours spent by Plaintiff Lieberg's counsel, collectively totaling 139.25 hours, which represents less than ten percent of the 1394.60 total hours spent by all counsel.

{26}    The affidavits in support of the Motion state that each of Plaintiffs' counsel accepted the engagement pursuant to a written contingency fee agreement that provides for a sharing of fees and that was appropriately signed by the clients.

## III.    ANALYSIS

### A.    The Court Has Authority to Award Attorneys' Fees Based on the Voluntary Stipulation Without the Need for Further Statutory Authority.

{27}    The long-standing general rule is that a court can award attorneys' fees to a prevailing party only if the court has the statutory authority to do so. *Faulkenbury v. Teachers' & State Emps.' Ret. Sys. of N.C.*, 345 N.C. 683, 696, 483 S.E.2d 422, 430 (1997); *Ehrenhaus I*, 216 N.C. App. at 94, 717 S.E.2d at 32.  This is known as the American rule.  In the context of a class-action settlement, the North

Carolina Court of Appeals has now resolved that the American rule does not govern a settlement where there is no "prevailing party," and that the Court does not need explicit statutory authority to award attorneys' fees where the parties have agreed to a fee-shifting provision in a voluntary settlement. *Ehrenhaus II*, 2015 N.C. App. LEXIS 771, at *19.

{28}    In *Ehrenhaus II*, the court of appeals explained that "the concerns the American Rule was intended to alleviate [are] not implicated" by voluntary settlement agreements. *Id.* at *20 (citing *Crutchfield v. Marine Power Engine Co.*, 209 P.3d 295, 304 (Okla. 2009) (explaining that "[e]xceptions to the American Rule are usually crafted to encourage the conservation of judicial resources by promoting settlement and discouraging unnecessarily protracted litigation")). Allowing parties to negotiate attorneys' fees is consistent with this State's policy of encouraging out-of-court settlements among litigants. *See Penn Dixie Lines, Inc. v. Grannick*, 238 N.C. 552, 555–56, 78 S.E.2d 410, 413 (1953); *Ehrenhaus II*, 2015 N.C. App. LEXIS 771, at *20–22. *Ehrenhaus II* makes clear that in the class-action context, a court can enforce a settlement agreement that provides for the payment of attorneys' fees, subject to the requirement that the Court's award must be reasonable.

{29}    *Ehrenhaus II* did not explicitly address whether the Court's authority to award fees under a voluntary settlement is limited to only the amount that a defendant has agreed not to contest. The Court reads *Ehrenhaus I* and *Ehrenhaus II* collectively to indicate that the Court's authority to award fees requires only that that the parties' voluntary settlement agreement provides for fee shifting and does not require parties to agree to a specific amount of the fees to be awarded. When the parties agree to fee shifting but do not agree on the amount of fees to be awarded, the Court may award the amount that it determines to be fair and reasonable, potentially subject to an agreed-to floor or cap.[4] In determining

---

[4] The Court is never bound to award class counsel an amount that it considers to be unreasonable. *Ehrenhaus II* recognizes that courts have a duty to encourage the voluntary resolution of disputes. It logically follows from the holding in *Ehrenhaus II* that parties are free to establish a cap on attorneys' fees. If the parties agree to a fee-shifting provision that includes a cap, the Court will award up to a maximum amount of fees within that cap if the Court finds that the fee request is

whether an award for attorneys' fees is fair and reasonable, the Court may consider, but is not bound by, the agreement of the parties. *See Ehrenhaus II*, 2015 N.C. App. LEXIS 771, at \*25 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount . . . .")).

{30}    Here, the parties have agreed to a fee-shifting provision and a floor, but they have not agreed on the specific amount that the Court should award. Thus, the Court must determine the amount of fees that would be both fair and reasonable under the circumstances.

{31}    The MOU and the Stipulation in this matter require Defendants to pay "whatever award of attorneys' fees, costs and expenses that the Court approves." (Pls.' Mot. Final Approval of Settlement Exs. C ¶ 12, at 18 & A ¶ 19, at 18.)  While Defendants are free to contest any request for an award greater than $275,000.00, the Court has discretion to award a higher amount.

{32}    The Court will review the fairness and reasonableness of Plaintiffs' requested fee award under Rule 1.5 of the North Carolina Rules of Professional Conduct ("Rule(s)") considering, but not being bound by, the respective assertions of the parties as to what amount is reasonable.

### B.    The Requested Award Is Reasonable Under Rule 1.5

{33}    After due consideration of the Rule 1.5 factors, the Court determines that the requested aggregate award of $550,000.00 is reasonable, is not clearly excessive, and should be awarded.

{34}    Rule 1.5 provides that "[a] lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee or collect a clearly excessive

---

reasonable under Rule 1.5 of the North Carolina Rules of Professional Conduct. *See Ehrenhaus II*, 2015 N.C. App. LEXIS 771, at \*20.  The parties can also agree to a floor on fees, which the Court may honor, as long as the Court finds that the floor falls within the range of reasonableness.  Here, the Court does not construe the language of the MOU or the Stipulation to reflect an agreement to cap fees at $275,000.00; rather, that figure represents an agreed-to floor.

amount for expenses." N.C. R. Prof'l Conduct 1.5(a). The rule provides that the following factors should be considered to determine whether a fee is "clearly excessive":

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

N.C. R. Prof'l Conduct 1.5(a)(1)–(8).

{35}    As noted above, Plaintiffs' counsel devoted 1394.60 hours to prosecuting the claims, not including appearances at the fairness hearing. Plaintiffs have adequately established that the hours were spent efficiently, at the direction of Lead Counsel, without unnecessary duplication of effort. This is particularly true considering that the requested award was adjusted downward after class notice, to eliminate any unnecessary duplication of effort.

{36}    The nature of the claims required highly skilled litigation counsel with experience in shareholder class-action lawsuits. Lead Counsel has experience in litigating shareholder class actions before both this Court and the Delaware Court of Chancery, and Liaison Counsel has substantial experience before this Court. However, the affidavit of Lead Counsel reflects billing rates that exceed those typically charged in North Carolina. The Court believes that there are North Carolina lawyers who are fully capable of pursuing similar litigation and, thus, that it would be unnecessary and inappropriate to apply billing rates higher than those typically charged by skilled counsel in North Carolina. *See GE Betz, Inc. v. Conrad*, __ N.C. App. __, 752 S.E.2d 634, 657 (2013) (explaining that "[i]n assessing the reasonableness of awarding [attorneys'] fees" to out-of-state counsel, a court should

"consider whether 'services of like quality [were] truly available in the locality where the services are rendered'" (third alteration in original) (quoting *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988))), *disc. rev. denied*, 367 N.C. 786, 766 S.E.2d 837 (2014).

{37}    From experience and as a result of its consideration of the records in other lawsuits, this Court is aware of the prevailing rates charged in North Carolina for similar litigation.  As noted above, the Court has determined that the aggregate requested award equates to roughly $550.00 per hour for partner hours of Lead Counsel, $375.00 per hour for partner hours of other counsel, and $250.00 per hour for associate time.  Those hourly fees are within, but at the higher end of, the range that this Court has found to be reasonable for complex business litigation in North Carolina. *See, e.g.*, *Nakatsukasa v. Furiex Pharms., Inc.*, 2015 NCBC LEXIS 71, at *24 (N.C. Super. Ct. July 1, 2015) (noting that rates of approximately $300.00 to $550.00 per hour are typical for this type of litigation in North Carolina); *see also In re Progress Energy S'holder Litig.*, 2011 NCBC LEXIS 45, at *26 (N.C. Super. Ct. Nov. 29, 2011) (describing a rate of $130.00 per hour as "well below the amount customarily charged in North Carolina" for complex business litigation).

{38}    The Court has considered Defendants' argument that the fee award should be discounted because the relief obtained for the class included only disclosures without monetary relief.  In other cases, that argument may have substantial merit.  Here, however, the argument in this case must be counterbalanced by at least two points.  First, the Court is granting no incentive over normal rates to reflect extraordinary success or to account for the contingent nature of the engagement.  Second, for the reasons discussed below, the Court finds that the particular supplemental disclosures that were obtained for the benefit of the class were sufficiently material and substantial to justify the recovery of fees calculated at normal hourly billing rates.

{39}    The fact that the settlement benefit was limited to supplemental disclosures is not dispositive in analyzing the reasonableness of fees measured against the results obtained under Rule 1.5.  The Court is mindful of substantial

commentary that disclosure settlements might often reflect more of a tax on the cost of a merger transaction rather than a meaningful substantive benefit to the settlement class, particularly when the accompanying release is the broadest possible.  Those considerations perhaps underlie the Delaware Court of Chancery's recent caution that fee requests in disclosure-only settlements may now face more searching scrutiny, particularly when accompanied by the broadest possible releases.  *See In re Riverbed Tech., Inc. S'holders Litig.*, C.A. No. 10484-VCG, 2015 Del. Ch. LEXIS 241, at *21–22 (Del. Ch. Sept. 17, 2015).[5]  The Court finds the caution to be a fair one.

{40}    The Court is nonetheless persuaded that a significant fee award is justified in this case in light of the particular supplemental disclosures obtained, together with the fact that the release does not preclude the appraisal remedy that North Carolina favors when a shareholder challenges the price of a transaction. *IRA ex rel. Oppenheimer v. Brenner Cos.*, 107 N.C. App. 16, 20, 419 S.E.2d 354, 357 (1992) (noting that when shareholders challenge the adequacy of consideration paid in a corporate transaction, the exclusive remedy is appraisal, absent "fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching" (quoting *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983))).

{41}    Defendants clearly and expressly agreed in both the MOU and the Stipulation that "the Supplemental Disclosures were solely caused by Plaintiffs' initiation and prosecution of their claims as set forth in the Consolidated Action, and that such Supplemental Disclosures constitute valid consideration to Pike and its shareholders."  (Pls.' Mot. Final Approval of Settlement Exs. A ¶ 19, at 17 & C ¶ 12, at 17.)  While it is difficult to place a monetary value on supplemental disclosures, *see In re Progress Energy S'holder Litig.*, 2011 NCBC LEXIS 45, at *27,

[5] This Court has considered various decisions of the Delaware Court of Chancery when it has approved prior class settlements.  Delaware recognizes the common-benefit doctrine, and the factors that the Delaware courts employ in granting fees to class counsel under that doctrine closely parallel the factors that this Court considers under Rule 1.5.  *See Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149–50 (Del. 1980).

Defendants agree that the supplemental disclosures in this case were material and constituted valid consideration. The supplemental disclosures in this particular case cannot be fairly characterized as "routine," as some of those supplemental disclosures were clearly required to correct prior material disclosures that erroneously described circumstances related to negotiations between the corporation, its CEO, and its suitor.

{42} In sum, on the particular facts of this case, the Court finds that there were sufficient supplemental disclosures of a value adequate to support the requested aggregate award.

{43} This is the Court's first opportunity to review a class settlement since the court of appeals's ruling in *Ehrenhaus II*. While *Ehrenhaus II* makes clear that the Court has the authority to award fees, it is equally clear that the authority is constrained by the Court's duty to closely scrutinize any fee request under a reasonableness standard. *Ehrenhaus II*, 2015 N.C. App. LEXIS 771, at *25. There must be evidence to support a conclusion that a requested fee is reasonable. The Court does not assume reasonableness, and the parties cannot substitute a simple agreement for record evidence of reasonableness. Absent such evidence, a court should either deny the request or substantially reduce its award to a reasonable amount supported by record evidence.

{44} In addition to considering the various Rule 1.5 factors in this case, the Court has also compared the requested award to a range of awards that this Court has found to be reasonable in disclosure-based settlements. *See, e.g.*, *In re PPDI Litig.*, 2012 NCBC LEXIS 33, at *10 (N.C. Super. Ct. May 24, 2012) (approving $450,000.00 in attorneys' fees); *In re Progress Energy S'holder Litig.*, 2011 NCBC LEXIS 45, at *35 (awarding $550,000.00 in attorneys' fees and expenses); Order, *Ehrenhaus v. Baker*, No. 08 CVS 22632 (N.C. Super. Ct. Feb. 5, 2010), http://www.ncbusinesscourt.net/TCDDotNetPublic/default.aspx?CID=3&caseNumber=08CVS22632 (approving $1,056,067.57 in attorneys' fees). Further, to the extent that review of Delaware precedent is meaningful, the requested fee in this matter falls within the range of fees that have been awarded by the Chancery Court in

disclosure-based settlements. *See In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, apps. A–C, at 1141–43 (Del. Ch. 2011).

{45} In sum, based on the record and the above considerations, the Court finds that the requested aggregate award of $550,000.00 is both fair and reasonable.

## IV. CONCLUSION

{46} For the foregoing reasons, the Court concludes as follows:

1. Plaintiffs are entitled to an aggregate award of $550,000.00;

2. This Order does not affect the finality of the Class Settlement, which the Court has approved by separate order;

3. This Order shall be deemed a Final Order in each of the four consolidated actions.

This the 8th day of October, 2015.

/s/ James L. Gale
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases